IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ROOSEVELT BUSSEY,

                          Plaintiff,
         v.
                                        Civil Action No.
                                        9:10-CV-1021 (NAM/DEP)


CHRISTOPHER MAYER,

                          Defendant.

_____

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF:

ROOSEVELT BUSSEY, *Pro Se*
09-A-0782
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929

FOR DEFENDANT:

HON. ERIC T. SCHNEIDERMAN        JUSTIN C. LEVIN, ESQ.
Attorney General of              Assistant Attorney General
the State of New York
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Roosevelt Bussey, a New York State prison inmate, commenced this action pursuant to 42 U.S.C § 1983 against various employees of the New York State Office of Mental Health ("OMH") and the New York State Department of Corrections and Community Supervision ("DOCCS"), alleging that during the course of his incarceration he has been deprived of his civil rights. Since its inception, motion practice has narrowed the scope of the action to include only one defendant, Christopher Mayer, and one cause of action, deliberate indifference to a serious medical need in violation of the Eighth Amendment. As relief, plaintiff requests injunctive, declaratory, and monetary relief.

Now that discovery in the action is closed, defendant Mayer has moved for the entry of summary judgment dismissing plaintiff's claim against him, arguing that no reasonable factfinder could conclude that he violated plaintiff's Eighth Amendment rights, and additionally asserting the defense of qualified immunity. For the reasons set forth below, I recommend that defendant's motion be granted.

I.    BACKGROUND[1]

Plaintiff is a prison inmate currently in the custody of the DOCCS. Am. Compl. (Dkt. No. 26) at ¶ 2; Bussey Decl. (Dkt. No. 49) at 4.  At the times relevant to his claims, Bussey was confined at the Auburn Correctional Facility ("Auburn"), located in Auburn, New York.  Bussey Decl. (Dkt. No. 49) at ¶ 5.  Plaintiff has been diagnosed with schizophrenia and post-traumatic stress disorder ("PTSD").  Am. Compl. (Dkt. No. 26) at ¶ 20.  As a result of these diagnoses, Bussey has been housed in the Intermediate Care Program ("ICP") at Auburn.  *Id.* at 22.

At various times throughout his incarceration, plaintiff has been placed in an observation unit within the Auburn ICP as part of the Residential Crisis Treatment Program ("RCTP").  Admission into the RCTP observation unit must be approved either by a prison psychiatrist or, if no psychiatrist is available, by defendant Mayer in his capacity as Chief of the Mental Health Unit at Auburn.  Mayer Decl. (Dkt. No. 43, Attach. 2) at ¶ 20.  Once in the RCTP, which is operated by a team comprised of defendant Mayer, a psychiatrist, a social worker, and a

_____

[1]    In light of the procedural posture of the case, the following recitation is derived from the record now before the court, with all inferences drawn and ambiguities resolved in plaintiff's favor.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

nurse administrator, an inmate-patient is evaluated on a daily basis. *Id.* at ¶¶ 20-22. Inmates are admitted into the RCTP when they suffer suicidal ideations or severe psychiatric decompensation to insure their safety and prevent harm to themselves or others. *Id.* ¶ 19. As a way to protect the inmate-patients from harm while in the RCTP, patients are given safety attire and safety mats to replace normal prison-issued sheets and clothing. *Id.* ¶¶ 5, 17-18; Am. Compl. (Dkt. No. 26) at ¶ 23.

Although plaintiff alleges that he was placed in the RCTP "numerous times for periods up to two weeks," the record does not support this allegation. Am. Compl. (Dkt. No. 26) at ¶ 24. Instead, plaintiff's extensive medical records, which were provided by defendant in support of the pending motion and not disputed by plaintiff in his opposition to defendant's motion, indicate that plaintiff was placed in the RCTP during three periods while at Auburn: (1) December 2-3, 2009, Dkt. No. 43, Attach. 4 at 36-39, 118; Dkt. No. 43, Attach. 5 at 10-11, 143-44; (2) April 22-28, 2010, Dkt. No. 43, Attach. 4 at 40-43, 119; Dkt. No. 43, Attach. 5 at 35, 37-39, 41-42, 151-52; and (3) August 6-10, 2010, Dkt. No. 43, Attach. 4 at 44-47, 120; Dkt. No. 43, Attach. 5 at 56-59, 63-65.

Plaintiff's medical records indicate that his mental illnesses were

treated in a variety of ways during his time at Auburn.  For example,

plaintiff met with a psychiatrist once or twice per month while at Auburn

between May 11, 2009 and September 2, 2011.  Dkt. No. 43, Attach. 4 at

129-70.  The psychiatrist's notes from each of these appointments, which

were completed utilizing a two-page form with space for handwritten

notes, recorded plaintiff's individual complaints and the psychiatrist's

assessment and plan, which varied at each appointment.  *Id.*  Additionally,

plaintiff was treated with medication, including, but not limited to,

Remeron, Risperdal, Clonidine, and Geodon, as reflected in the following

three separate categories of medical records: (1) the psychiatric notes

dated May 11, 2009 to September 2, 2009, *id.*; (2) physician's orders

dated April 28, 2009 to October 30, 2011, Dkt. No. 43, Attach. 5 at 154-

64; and (3) plaintiff's medication treatment record dated February 13,

2009 to October 30, 2011, *id.* at 167-223.

Plaintiff also attended ICP programming each week.  Although his

amended complaint alleges that he did not receive the twenty hours of

weekly programming required by ICP guidelines, his medical records

demonstrate otherwise.  Am. Compl. (Dkt. No. 26) at ¶¶ 32, 34, 36.

Specifically, the medical records indicate that plaintiff received, on

average, twenty-two hours of programming per week.  Dkt. No. 43, Attach. 4 at 197-200, 210-211, 217-18, 229-30, 234-35, 239-40; Dkt. No. 43, Attach. 5 at 2-3, 22-23, 28-29, 43-46, 51-52, 30-61, 67-70, 76-77, 78-79, 86-87, 91-92, 104-05, 107-08, 112-15, 127-28, 134-35, 141-42.  On the weeks where plaintiff did not receive twenty hours of programming, the records provide an explanation.  For example, for April 2009, the medical record indicates that plaintiff did not receive twenty hours of programming because he was admitted to ICP on April 23, 2009.  Dkt. No. 43, Attach. 4 at 197.  Again in May 2009, plaintiff did not receive twenty hours of programming because the facility was on lockdown for six of the days.  *Id.* at 199.

Plaintiff's medical records indicate that he was personally involved in his treatment plans by attending six clinical case review treatment meetings with, among others, his therapist.  Dkt. No. 43, Attach. 4 at 201-02, 205, 238; Dkt. No. 43, Attach. 5 at 5, 66, 140.  Additionally, plaintiff received, reviewed, and signed six treatment plans that included updated diagnoses, progress made by plaintiff since that last treatment plan review, goals for future progress, and methods for achieving those goals.  Dkt. No. 43, Attach. 4 at 51-80, 82-117.

Finally, in addition to all of the above, plaintiff regularly met with his therapist for treatment. The medical records demonstrate that plaintiff met with his therapist for a private session at least once per month between April 30, 2009 and September 26, 2011, for an average of forty-five minutes each. Dkt. No. 43, Attach. 4 at 195-96, 203-04, 206-09, 219, 223-24, 228,- 232-33, 236-37; Dkt. No. 43, Attach. 5 at 13-14, 16, 18-19, 21, 25, 32-34,50, 53-54, 71-72, 74-75, 80-81, 82, 88-90, 93-95, 101-02, 109-11, 118-19, 120-26, 129-32, 137-39, 143-45. In addition to these private sessions, his therapist met with him on twenty other occasions, "cell side," to respond to concerns by either plaintiff or correctional officers. Dkt. No. 43, Attach. 4 at 4-8, 15, 56, 64, 83-85, 106, 133, 136; Dkt. No. 43, Attach. 5 at 212-13, 215-16, 220, 221-22, 225, 226-27, 231.

On March 23, 2010, plaintiff filed a grievance complaining of "insufficient and ineffective mental health care." Am. Compl. (Dkt. No. 26) at ¶ 39; Am. Compl. Exh. A (Dkt. No. 26) at 16. Defendant Mayer responded to the grievance in writing, advising plaintiff that he should direct any concerns regarding his mental health treatment to his therapist, and assuring plaintiff that OMH staff was "following the rules and regulations established." Am. Compl. Exh. A (Dkt. No. 26) at 17.

Plaintiff's appeal of that grievance denial to the superintendent at Auburn was denied on April 22, 2010.  Am. Compl. Exh. B (Dkt. No. 26) at 19.  In his decision, the facility superintendent informed plaintiff that, because the policies of external agencies, such as the OMH, are outside of the purview of the DOCCS, any complaints or grievances against the OMH are not addressable through the prison grievance process.  *Id.* Plaintiff appealed that decision to the DOCCS Central Office Review Committee ("CORC"), which affirmed the superintendent's findings.  *Id.* at 20.  In its decision, the CORC advised plaintiff that he should "address any further similar concerns to the [OMH] Unit Chief and/or [plaintiff's] primary therapist."  *Id.*

II.     PROCEDURAL HISTORY

Plaintiff's original complaint and motion to proceed *in forma pauperis* ("IFP") were filed on August 24, 2010.  Dkt. Nos. 1, 2.  On November 24, 2010, the court granted plaintiff's IFP application.  Dkt. No. 5.  In lieu of an answer, the named-defendants in plaintiff's original complaint filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 17.  On September 27, 2011, District Judge Norman A. Mordue adopted my report and

recommendation responding to the defendants' motion to dismiss, and, as a result, plaintiff's complaint was dismissed, but plaintiff was granted leave to file an amended complaint. Dkt. No. 24. Plaintiff filed his amended complaint on October 17, 2011, Dkt. No. 26, and that new pleading was accepted for filing by order issued on October 21, 2011. Dkt. No. 28. When I accepted the amended complaint for filing, however, I ordered that, because the amended complaint failed to include allegations plausibly suggesting the personal involvement of three of the named-defendants, only the amended complaint's cause of action asserted against defendant Mayer would go forward. *Id.*

Following the close of discovery, defendant Mayer filed a motion for summary judgment seeking dismissal of plaintiff's remaining claim on April 24, 2012. Dkt. No. 41. Defendant's motion argues that plaintiff does not suffer from a serious medical condition giving rise to an Eighth Amendment deliberate indifference claim, and, in any event, the record evidence demonstrates that defendant Mayer did not act with deliberate indifference. Def.'s Memo. of Law (Dkt. No. 43, Attach. 3) at 8-10. Additionally, defendant argues that he is entitled to qualified immunity. *Id.* at 10-13. Defendant's motion, which plaintiff opposes, Dkt. No. 49, has

been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

   A.   Summary Judgment Standard

   Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

   A party moving for summary judgment bears an initial burden of

demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.      Plaintiff's Deliberate Indifference Claim

Plaintiff's amended complaint alleges that, while he was confined at Auburn, he received ineffective treatment for his mental illnesses, which consist of schizophrenia and PTSD.  *See generally* Am. Compl. (Dkt. No. 26).  Specifically, plaintiff's amended complaint alleges that his appointments with psychiatrists were too brief, no psychiatric testing was administered, and he was denied appropriate therapeutic programming.  *Id.*  In support of his motion for summary judgment, defendant Mayer argues that plaintiff does not have a serious medical condition, and, in any event, he did not act with the requisite mental state for a claim of deliberate indifference to a serious medical condition under the Eighth Amendment.  Def.'s Memo. of Law (Dkt. No. 43, Attach. 3) at 8-10.

1.      Legal Standard Governing Deliberate Indifference

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or which 'involve the unnecessary and wanton infliction of pain[.]'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (internal citations omitted)).  While the Eighth Amendment

"'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

"These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle,* 429 U.S. at 103.  Failure to provide inmates with medical care, "[i]n the worst cases, . . . may actually produce physical torture or lingering death, [and] . . . [i]n less serious cases, . . . may result in pain and suffering no one suggests would serve any penological purpose." *Id.*

A claim alleging that prison officials have violated an inmate's Eighth Amendment rights by inflicting cruel and unusual punishment must satisfy both objective and subjective requirements.  *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009); *Price v. Reilly*, 697 F. Supp. 2d 344, 356 (E.D.N.Y. 2010).  To satisfy the objective requirement, the Second Circuit has said that

> [d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries.  The first inquiry is whether the prisoner was actually deprived of adequate medical care.  As the Supreme Court has noted, the prison official's duty is only to provide reasonable medical care . . . . Second, the objective test asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to

> examine how the offending conduct is inadequate
> and what harm, if any, the inadequacy has caused or
> will likely cause the prisoner.

*Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) (internal

citations omitted).

The second inquiry of the objective test requires a court to look at

the seriousness of the inmate's medical condition if the plaintiff alleges a

complete failure to provide treatment. *Smith v. Carpenter*, 316 F.3d 178,

185-86 (2d Cir. 2003). "Factors relevant to the seriousness of a medical

condition include whether 'a reasonable doctor or patient would find it

important and worthy of comment, whether the condition significantly

affects an individual's daily activities, and whether it causes chronic and

substantial pain." *Salahuddin*, 467 F.3d at 280 (internal quotation marks

and alterations omitted).

If, on the other hand, a plaintiff's complaint alleges that treatment

was provided but was inadequate, the second inquiry of the objective test

is narrowly confined to that specific alleged inadequacy, rather than

focusing upon the seriousness of the prisoner's medical condition.

*Salahuddin*, 467 F.3d at 280. "For example, if the prisoner is receiving on-

going treatment and the offending conduct is an unreasonable delay or

interruption in that treatment, [the focus of the] inquiry [is] on the challenged delay or interruption in treatment, rather than the prisoner's underlying medical condition alone." *Id.* (quoting *Smith*, 316 F.3d at 185) (internal quotations marks omitted).

To satisfy the subjective requirement, a plaintiff must demonstrate that the defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'" *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999). "In medical-treatment cases . . ., the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280. "Deliberate indifference," in a constitutional sense, "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (citing *Farmer*, 511 U.S. at 837); *see also Leach v. Dufrain,* 103 F. Supp. 2d 542, 546 (N.D.N.Y. 2000) (Kahn, J.) (citing *Farmer*); *Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J. and Homer, M.J.) (same).[2] "Deliberate indifference is a mental state equivalent to subjective recklessness, as the

---

[2]     Copies of all unreported decisions cited in this document have been appended for the convenience of the *pro se* plaintiff.

term is used in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 839-40).

    2.    Analysis

Addressing defendant Mayer's first argument, that plaintiff does not suffer from a sufficiently serious medical condition, I disagree that this is a dispositive inquiry. Indeed, the Second Circuit has clearly indicated that "although we sometimes speak of a 'serious medical condition' as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability." *Salahuddin*, 467 F.3d at 280. In any event, however, the court has previously held that plaintiff's mental illnesses in this case are sufficiently serious under an Eighth Amendment analysis. Dkt. No. 28 at 11. Defendant has not submitted any authority that persuades the court to change its position.

Turning to defendant Mayer's second argument, that the record evidence does not demonstrate that he acted with the requisite deliberate indifference in providing plaintiff with mental health treatment, I must first determine whether there is sufficient record evidence to establish defendant Mayer's personal involvement in the alleged constitutional

violation.  In his capacity as the Chief of the Mental Health Unit at Auburn,

and a health care provider that did not, at any time, provide direct care to

plaintiff, defendant Mayer may be held liable under section 1983 only in

his capacity as a supervisor.  Although there is no *respondeat superior*

liability under section 1983, supervisors may be held responsible for a civil

rights violation when it is established that the supervisor (1) has directly

participated in the challenged conduct; (2) after learning of the violation

through a report or appeal, failed to remedy the wrong; (3) created or

allowed to continue a policy or custom under which unconstitutional

practices occurred; (4) was grossly negligent in managing subordinates

who caused the unlawful event; or (5) failed to act on information

indicating that unconstitutional acts were occurring.  *Iqbal v. Hasty*, 490

F.3d 143, 152-53 (2d Cir. 2007), *rev'd on other grounds sub nom.*,

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *see also Richardson*, 347 F.3d at

435; *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).[3]

---

[3]     The Second Circuit has yet to address the impact of the Supreme Court's decision in *Iqbal* on the categories of supervisory liability under *Colon*.  Lower courts have struggled with this issue – specifically in deciding whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability.  *Sash v. United States*, 674 F. Supp. 2d 542-44 (S.D.N.Y. 2009); *see also Stewart v. Howard*, No. 09-CV-0069, 2010 WL 3907227, at *12 n.10 (N.D.N.Y. Apr. 26, 2010) (Lowe, M.J.) ("The Supreme Court's decision in [*Iqbal*] arguably casts in doubt the continued viability of some of the categories set forth in *Colon*." (citing *Sash*)).  In this case, absent any controlling authority to the contrary, the court assumes that all of the *Colon*

In this case, plaintiff complained to defendant Mayer that he was receiving "insufficient and ineffective mental health care" through a grievance complaint submitted in March 2010. Am. Comp. Exh. A (Dkt. No. 26) at 16. Defendant Mayer responded to plaintiff in writing indicating that "OMH staff is following the rules and regulations established" and advising plaintiff to "express [his] concerns with [his] primary therapist[.]" *Id.* at 17. Because "[p]ersonal involvement will be found. . . where a supervisory official . . . reviews and responds to a prisoner's complaint," a reasonable factfinder could conclude that defendant Mayer was personally involved in the constitutional violation asserted by plaintiff. *Johnson v. Goord*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002).

The next inquiry involves whether the record evidence demonstrates a dispute of material fact as to whether plaintiff received inadequate mental health treatment under the objective test of the relevant Eighth Amendment analysis. *Salahuddin*, 467 F.3d at 280; *see also Cole v. Fischer*, 2009 WL 3734343, at *5 (W.D.N.Y. Nov. 4, 2009) ("For supervisory officials to be held liable for deliberate indifference, the elements of deliberate indifference must be found."). This inquiry depends

_____

categories still apply.

on "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition[.]"  *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

Here, after carefully reviewing the entire record, I conclude that there is no genuine dispute of material fact as to whether plaintiff faced a risk of harm due to his alleged inadequate care.  Plaintiff's complaint alleges only that he "suffered needlessly from the symptoms of his illness[es]" as a result of the alleged deprivation of care.  Am. Compl. (Dkt. No. 25) at 6.  Additionally, in opposition to defendant Mayer's motion, plaintiff avers that he suffered "increased debilitating symptoms" between April 23, 2009, and October 31, 2009, as a result of an alleged deprivation of programming.  Plf. Decl. (Dkt. No. 49) at 6.  In contrast to these conclusory and unsupported statements, however, plaintiff's medical records reflect that, during the time he was confined in the ICP at Auburn, he received considerable group programming, including the twenty hours of programming required by DOCCS and OMH policies.  Dkt. No. 43, Attach. 4 at 197-200, 210-211, 217-18, 229-30, 234-35, 239-40; Dkt. No. 43, Attach. 5 at 2-3, 22-23, 28-29, 43-46, 51-52, 30-61, 67-70, 76-77, 78-

79, 86-87, 91-92, 104-05, 107-08, 112-15, 127-28, 134-35, 141-42.[4]

Additionally, the record also reflects that plaintiff attended at least one private therapy session per month with his therapist between April 30, 2009 and September 26, 2011, for an average of forty-five minutes each. Dkt. No. 43, Attach. 4 at 195-96, 203-04, 206-09, 219, 223-24, 228,- 232-33, 236-37; Dkt. No. 43, Attach. 5 at 13-14, 16, 18-19, 21, 25, 32-34,50, 53-54, 71-72, 74-75, 80-81, 82, 88-90, 93-95, 101-02, 109-11, 118-19, 120-26, 129-32, 137-39, 143-45.  These private sessions were

---

[4]     In support of his claim, plaintiff cites an "Intermediate Care Program Manual" issued in 2009 jointly by the DOCCS's predecessor agency and the OMH, in which provides that "[e]ach ICP inmate-patient will be scheduled for 20 hours per week of out of cell structured therapeutic activities."  Am. Compl. Exh. C (Dkt. No. 26) at 32. Although the record evidence demonstrates that plaintiff received, on average, twenty-two hours per week of programming, which would satisfy the ICP Manual's requirements, even assuming that plaintiff did not receive the requisite programming, such violation of an agency's policy, standing alone, does not rise to the level of deliberate indifference under the Eighth Amendment.  *See, e.g.*, *Davis v. Livingston*, 2010 WL 2573007, at *2 (N.D. Tex. June 24, 2010) ("Allegations of violations of state law or agency rules, without more, are insufficient to maintain a constitutional claim.") (citing *Daniels v. Williams*, 474 U.S. 327, 332-33 (1986)); *Gonsalves v. I.R.S.*, 986 F.2d 1407 (Table), at *3 (1st Cir. 1993) ("The violation of a regulation which the Constitution does not require an agency to adopt does 'not raise constitutional questions.'" (quoting *United States v. Caceres*, 440 U.S. 741,752 (1979)).

        Moreover, plaintiff's reliance upon the ICP Manual is misplaced, ignoring the language that follows the rule requiring twenty hours of programming, which specifically defines "therapeutic activity" to include, among other things, "community meetings, group therapy, activity therapy, individual therapy, SOCTP, MICA, ART, Transitional Services, and *recreational therapy*."  Am. Compl. Exh. C (Dkt. No. 26) at 32 (emphasis added).  While plaintiff appears to contend that this provision requires that he be provided with, what he describes as, "a core curriculum of groups", Am. Compl. (Dkt. No. 26) at ¶ 35, it is abundantly clear that the ICP Manual is not so restrictive when it comes to defining acceptable therapeutic activities.  *Id.*

supplemented by twenty "cell side" visits from his therapist, who was occasionally accompanied by plaintiff's psychiatrist.  Dkt. No. 43, Attach. 5 at 212-13, 215-16, 220, 221-22, 225, 226-27, 231; Dkt. No. 43, Attach. 4 at 4-8, 15, 56, 64, 83-85, 106, 133, 136.

The record evidence also establishes that plaintiff was prescribed medication by a prison psychiatrist who regularly monitored his conditions. Dkt. No. 43, Attach. 4 at 129-70; Dkt. No. 43, Attach. 5 at 154-64, 167-223.  Moreover, plaintiff's amended complaint alleges, and the record evidence confirms, that plaintiff was placed in the RCTP on three occasions for varying lengths of time.  Am. Compl. (Dkt. No. 26) at ¶ 24; Dkt. No. 43, Attach. 4 at 36-39, 40-47, 118-120; Dkt. No. 43, Attach. 5 at 10-11, 35, 37-39, 41-42, 56-59, 63-65, 143-44, 451-52.  In contrast to plaintiff's allegation that he stayed in the RCTP for up to two weeks, however, the medical records suggest that his stays never exceeded seven consecutive days.  Dkt. No. 43, Attach. 4 at 10, 11, 35-47, 56-59, 63-65, 118-19, 151-52.  Notably, the medical records also suggest that plaintiff agreed to admission into the RCTP on each of the three occasions.  Dkt. No. 43, Attach. 5 at 9 (indicating that plaintiff felt safer in the RCTP than in ICP), 30 (reporting that plaintiff "stated that he would

have 'no problem' remaining [in the RCTP] till next week," and reporting that plaintiff was "relieved to be removed from ICP and brought up to the RCTP"), 56 (reporting that plaintiff "requested a respite in the RCTP").

Finally, the record evidence demonstrates that plaintiff was intimately involved in his treatment care.  He attended six clinical case review treatment meetings, Dkt. No. 43, Attach. 4 at 201-02, 205, 238; Dkt. No. 43, Attach. 5 at 5, 66, 140, and received, reviewed, and signed each of the six treatment care plans drafted on his behalf, Dkt. No. 43, Attach. 4 at 51-80, 82-117.

The cumulation of the above medical record evidence demonstrates plaintiff was not at risk to any harm that would rise to the level of inadequate care under the Eighth Amendment.  Although the court acknowledges plaintiff's vague averment that he suffered increasing symptoms as a result of the alleged inadequate care, I find that no reasonable factfinder could conclude, in light of the medical records submitted by defendant Mayer, that he suffered from inadequate care.[5]

_____

[5]     Parenthetically, I note that, although the court, with no medical background, is not in a position to evaluate whether plaintiff's medical records do, in fact, demonstrate that his symptoms increased during the course of his confinement at Auburn, my extensive review does not reveal any obvious indication that his condition worsened over time.  By way of example, plaintiff's therapist reported, in her final meeting with plaintiff before he was transferred to Clinton Correctional Facility, that plaintiff continues to "demonstrat[e] recurrent episodes and [a] need for ICP services,"

22

Although I have concluded that plaintiff cannot satisfy the requirements under the objective test for an Eighth Amendment deliberate indifference claim, for the sake of completeness, I will briefly analyze whether the record establishes that defendant Mayer acted with the requisite deliberate indifference to satisfy the subjective requirement. Because the record now before the court does not demonstrate that plaintiff was at risk of harm based on alleged inadequate care, I find that no reasonable factfinder could conclude that defendant Mayer acted or failed to act "while actually aware of a substantial risk that serious . . . harm will result." *Salahuddin*, 467 F.3d at 280 (citing *Farmer,* 511 U.S. at 837). In addition, there is no evidence that defendant Mayer was both aware of facts from which he could infer that plaintiff faced a substantial risk of serious harm, and that defendant Mayer, in fact, drew that inference. Therefore, I find that no reasonable factfinder could conclude that defendant Mayer acted with the requisite deliberate indifference that gives rise to an Eighth Amendment claim.

As the foregoing reflects, based upon the record now before the court, I conclude that plaintiff's deliberate indifference claim fails to satisfy

---

but also that plaintiff "seemingly benefit[s] from ICP programming." Dkt. No. 43, Attach. 5 at 147.

both the objective and subjective prongs of the governing Eighth Amendment deliberate medical indifference test. Accordingly, I recommend dismissal of that claim.[6]

IV.   SUMMARY AND RECOMMENDATION

The record now before the court establishes that there is no genuine dispute of material fact as to whether plaintiff received constitutionally adequate treatment for his mental health illnesses while in the ICP at Auburn, and that, even when all ambiguities are resolved and inferences are drawn in plaintiff's favor, no reasonable factfinder could determine that objectively, plaintiff was deprived of adequate medical care, and subjectively, defendant Mayer was aware of facts from which it could be inferred that he knew of but disregarded a substantial risk of harm to plaintiff. Accordingly, it is hereby respectfully

RECOMMENDED that defendant Mayer's motion for summary judgment (Dkt. No. 43) be GRANTED, and that plaintiff's complaint be DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge

---

[6]   In light of this recommendation, I have not addressed defendant Mayer's alternative argument that he is entitled to qualified immunity under the circumstances presented.

written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

ORDERED, that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: February 4, 2013
Syracuse, New York

David E. Peebles
U.S. Magistrate Judge


Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

C  Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
No. 97-CV-1385 LEK DRH.

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER [FN1]

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.[FN2] In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

## I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

## II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from these facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

## III. Discussion

### A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

### 1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes*, 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,*524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at \*3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at \*3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989);* 28 U.S.C. § 636(b)(1);* Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jesse L. STEWART, Jr., Plaintiff,
v.
Gary HOWARD, D. Monell, N. Marsh, D.
Spangenburg, D. Swarts, E. Hollenbeck, J. Edwards, D.
Russell, Defendants.
No. 9:09–CV–0069 (GLS/GHL).

April 26, 2010.
Jesse L. Stewart, Jr., Marienville, PA, pro se.

Office of Frank W. Miller, Frank W. Miller, Esq., Michael
J. Livolsi, Esq., of Counsel, East Syracuse, NY, for
Defendants.

### REPORT–RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

**\*1** This *pro se* prisoner civil rights action,
commenced pursuant to 42 U.S.C. § 1983, has been
referred to me for Report and Recommendation by the
Honorable Gary L. Sharpe, United States District Judge,
pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).
Plaintiff Jesse L. Stewart alleges that Defendants, all
employees of the Tioga County Jail, violated his
constitutional rights by limiting his ability to send legal
mail, depriving him of his mattress and bedding during
daytime hours, subjecting him to excessive force, denying
him medical care after the alleged use of excessive force,
and conducting biased disciplinary hearings. Currently
pending before the Court is Defendants' motion for
summary judgment pursuant to Federal Rule of Civil
Procedure 56. (Dkt. No. 30.) Plaintiff has opposed the
motion. (Dkt. No. 32.) For the reasons that follow, I
recommend that Defendants' motion be granted.

### I. FACTUAL AND PROCEDURAL SUMMARY

This action involves Plaintiff's experiences at Tioga
County Jail, where he was incarcerated from August 19,
2008, to January 13, 2009. (Dkt. No. 30–4 at 14:2–11.)
The complaint consists almost entirely of copies of
grievances and letters that Plaintiff submitted to other
individuals and organizations. The "facts" section of the
civil complaint form merely directs the reader to "see
attached." As such, the precise contours of Plaintiff's
claims are difficult to discern. The documents attached to
the complaint show that:

On September 22, 2008, Plaintiff requested a
grievance form so that he could complain about the
facility's legal mail procedures. (Dkt. No. 1 at 41.) A
grievance form was issued. *Id.*

On October 27, 2008, Plaintiff requested a grievance
form so he could complain about being denied access
to the courts. (Dkt. No. 1 at 44.) Sgt. William "spoke with
[Plaintiff] but he refuses to sign off. He states he needs
these letters to go out to these courts because he's fighting
extradition." *Id.*

On October 30, 2008, Defendant Officer Earl
Hollenbeck issued an Inmate Rule Infraction Notice to
Plaintiff accusing him of sending mail using another
inmate's account. (Dkt. No. 1 at 31.)

In a "notice of intention" dated November 30 2008,
Plaintiff alleged that, pending disciplinary action against
him, staff at the Tioga County Jail deprived him of his
mattress, sheets, and blanket when temperatures were as
low as fifteen degrees at night and forced him to sit
directly on his steel bed for periods up to seventeen hours.
(Dkt. No. 1 at 8.) In support of Defendants' summary
judgment motion, Defendant Lt. David Monell declares
that when inmates are accused of violating a disciplinary
rule, they are placed in administrative segregation pending
a hearing. During that time, the inmate's bedding is
removed during the day. If this was not done, "inmates
may intentionally violate rules in order to be assigned to
administrative segregation so they could sleep in the cell
all day instead of having to adhere to the normal inmate
routine." (Dkt. No. 30–11 at 6 ¶ 12.) The parties agree that
inmates' mattresses and bedding are returned at night.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

(Dkt. No. 1 at 10; Dkt. No. 30–11 at 6 ¶¶ 13–15.)

**\*2** In his "notice of intention," Plaintiff alleged that on November 3, 2008, he asked for a grievance form. (Dkt. No. 1 at 8.) Defendant Officer Douglas Swarts told him "if you don't shut the fuck up I'll have a few people shut you up." *Id.* Two or three minutes later, several other officers, including Defendant Sergeant Dennis Spangenburg, arrived and stood in front of Plaintiff's locked cell. *Id.* Plaintiff asked Defendant Spangenburg why he was denying Plaintiff the right to file a grievance. *Id.* at 8–9. Defendant Spangenburg replied "I can deny you anything I want." *Id.* at 9. Defendant Officers Jonathan Edwards and David Russell then entered Plaintiff's cell and handcuffed Plaintiff so tightly that the handcuffs "stopp[ed] the flow of blood to [Plaintiff's] hands." *Id.* Defendants Edwards and Russell then escorted Plaintiff to the intake area of the facility. Along the way, they used Plaintiff's "head and body as a ram to open the electronically control[l]ed doors," which cut Plaintiff's lip and caused his nose to bleed. *Id.* Attached to Plaintiff's complaint are affidavits from inmates who state that they witnessed this incident. *Id.* at 14–15.

Plaintiff alleged in his "notice of intention" that upon arrival at the intake area, he was placed in a strip isolation cell. (Dkt. No. 1 at 9.) Several officers "entered in behind me, at what time I was hit with closed fist[s] and what felt like kicks from all directions to my head, back, ribs, and groin area several times." *Id.* Plaintiff was punched in the right eye. *Id.* After that, Plaintiff's handcuffs were removed and Defendant Sergeant Nathaniel Marsh entered the cell, grasped Plaintiff around the neck with one hand, held his mace an arm's length away from Plaintiff's face, and repeated "get the fuck up you little asshole" over and over. *Id.*

Defendants Marsh, Spangenburg, Swarts, Edwards, and Russell have submitted notarized affidavits in support of Defendants' motion for summary judgment stating that they did not assault Plaintiff. (Dkt. No. 30–11 at 10, 12, 18, 22, 24.)

At 10:50 a.m., Defendant Swarts issued two Inmate Rule Infraction Notices. The first stated that Plaintiff "refused to lock in his cell after numerous orders to do so.

Duress alarm was activated." (Dkt. No. 1 at 32.) The second stated that Plaintiff "disrupted the pod by yelling threats to jail personnel." *Id.* at 33.

In his "notice of intention," Plaintiff alleged that he needed medical attention but was locked in the cell alone without such attention for approximately fourteen hours. (Dkt. No. 1 at 9.) At 11:30 p.m., Plaintiff was escorted back to his usual cell. *Id.* All of his personal property had been removed and he was given only a mattress and a blanket. *Id.* The next morning, officers removed the mattress. *Id.* Plaintiff was told that he could only shower if he remained handcuffed and shackled. *Id.* He was given only two sheets of toilet paper. *Id.* at 9–10. This pattern of being given a mattress at night and having it removed in the morning continued for ten days. *Id.* at 10.

**\*3** On November 6, 2008, Plaintiff submitted an Inmate Request Form asking to "be released from ... restraint and receive my property back today." (Dkt. No. 1 at 45.) His request was denied. *Id.*

In his "notice of intention," Plaintiff alleged that when his property was finally returned to him, he "became submissive" and "did not file any more grievances as I was told not to or the next time it may be worse." *Id.* at 10.

In his "notice of intention," Plaintiff alleged that Defendant Marsh conducted a biased disciplinary hearing and found him guilty "on all of the infractions." (Dkt. No. 1 at 10.) Another attachment to the complaint shows that on November 12, 2008, Defendant Marsh found Plaintiff guilty and sentenced him to twenty-eight days of keeplock with no programs, no commissary, twenty minute hygiene, and legal phone calls only. *Id.* at 34.

In his "notice of intention," Plaintiff alleged that there is no "inhouse mail, or legal outgoing mail system" at Tioga County Jail and that Defendants refused to mail any item that would cost more than eighty-four cents. (Dkt. No. 1 at 10.)

On December 1, 2008, Officer Sean Shollenberger issued an Inmate Rule Infraction Notice stating that Plaintiff used stamps from another inmate to send personal mail. (Dkt. No. 1 at 35.) A hearing was scheduled for

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

December 17, 2008. Plaintiff filed a written request stating that he had been informed of the hearing and requesting "that any decision to be determined may be done so without my participation or presence ... I do not wish to participate in such hearing." (Dkt. No. 1 at 36.) Plaintiff's request was approved. *Id.* At the hearing, Defendant Marsh found Plaintiff guilty and sentenced him to fourteen days of keeplock, no programs, no commissary, twenty minute hygiene, and legal calls only. *Id.* at 37. Defendant Marsh noted that "this is not the first infraction hearing due to [Plaintiff's] abusing the U.S. Postal Service." *Id.* On December 18, 2008, Plaintiff appealed the decision. *Id.* at 38. Plaintiff stated that he had refused to attend the hearing because of Defendant Marsh's previous use of force against him and because the hearing was not recorded. *Id.* at 39. The Chief Administrative Officer denied the appeal on December 23, 2008, because the "sanctions imposed are appropriate." *Id.* at 38.

On December 17, 2008, Plaintiff requested two grievance forms so that he could complain about the lack of bedding and facility disciplinary and hearing procedures. Grievance forms were issued. (Dkt. No. 1 at 46–47.)

On December 18, 2008, Plaintiff submitted a grievance complaining about the lack of bedding, visits, food, medical care, access to courts, and water. (Dkt. No. 1 at 20.) The grievance coordinator denied the grievance because "[d]iscipline is not grievable. There is an appeal process which the inmate can follow." *Id.* at 22. Plaintiff appealed to the Chief Administrative Officer. *Id.*

**\*4** On December 18, 2008, Plaintiff submitted a grievance complaining about Defendant Marsh's conduct during the disciplinary hearing <sup>FN1</sup> and requesting that disciplinary hearings be recorded or monitored by another hearing officer. (Dkt. No. 1 at 23–24.) The Grievance Coordinator denied the grievance because "NYS Minimum Standards requires that records be kept of infraction hearings. Records are kept of the infraction hearing. The TCJ does not have more than one officer available to do infraction hearings." *Id.* at 25. Plaintiff appealed to the Chief Administrative Officer. *Id* . On December 22, 2008, Defendant Marsh completed a Grievance Investigation Form stating that he interviewed

Plaintiff. Defendant Marsh found that "this facility keeps all hearing records as well as provide a copy of the hearing record to the inmate. This facility has more than one hearing officer available." *Id.* at 26.

> **FN1.** Although it is not clear, Plaintiff was presumably referring to the November 12, 2008, hearing, which he attended, rather than the December 17, 2008, hearing that he refused to attend.

On December 18, 2008, Plaintiff submitted an Inmate Request Form asking to speak with the Undersheriff or Captain. (Dkt. No. 1 at 48 .)

On December 22, 2008, Plaintiff wrote a letter to the Chairman of the New York Commission of Corrections; the Hon. Thomas J. McAvoy, Senior United States District Judge, and the New York State Attorney General regarding conditions at Tioga County Jail. (Dkt. No. 1 at 16–17.) Specifically, Plaintiff complained about the bedding issue, the grievance and appeal system, and the legal mail system. *Id.*

On December 28, 2008, Plaintiff submitted a grievance complaining about the facility's legal mail procedure. (Dkt. No. 1 at 27.) The Grievance Coordinator denied the grievance because "[t]his facility is not denying you access to the courts. Minimum standards ha[ve] been and will be controlled by the State of NY, therefore this issue is not grievable. NYSCOC was contacted regarding your reference to a 'new' state directive regarding legal mail. No such directive exists." *Id.* at 28. Plaintiff checked the box indicating that he wanted to appeal to the Chief Administrative Officer and wrote a note that he "was told that Lt. D. Monell is the Chief Officer and that I could not appeal this decision any higher." *Id.*

In his "notice of intention," Plaintiff alleged that on December 31, 2008, he was summoned to the front of the jail for an interview with Defendant Lt. D. Monell. (Dkt. No. 1 at 11.) Defendant Monell questioned Plaintiff about his December 22, 2008, letter to the Commission of Corrections. *Id.* Defendant Monell said that he did not give a damn about federal standards regarding bedding. *Id.* Defendant Monell told Plaintiff he should save his weekly

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

postage allowance until he had enough to send a large document and did not respond when Plaintiff informed him that he was not allowed to do. *Id.* Regarding Plaintiff's complaint that he had received only two sheets of toilet paper, Defendant Monell replied that this was facility policy. (Dkt. No. 1 at 12.) Defendant Monell stated that he had reviewed the videotape of the alleged excessive force incident and did not see anything. *Id.* Defendant Monell asked "in a sarcastic manner" whether Plaintiff wanted protective custody because he felt threatened by the facility's officers. Plaintiff said no. *Id.*

**\*5** On January 1, 2009, Plaintiff filed an Inmate Request Form stating that he had not received responses to his appeals regarding disciplinary hearings. (Dkt. No. 1 at 49.) Defendant Russell responded that "Grievance # 36 was upheld so there is no appeal. Grievance # 35 was not a grievable issue because it regarded disciplinary sanctions." (Dkt. No. 1 at 50.)

On January 1, 2009, Plaintiff wrote to the Commission of Corrections informing them of his conversation with Defendant Monell and requesting an outside investigation. (Dkt. No. 1 at 18.)

On January 5, 2009, Plaintiff filed an Inmate Request Form asking for a grievance form. He stated that "the taking of bedding is not a disciplinary sanction but in fact an illegal practice." (Dkt. No. 1 at 42.) Defendant Monell replied that "removal of bedding is a disciplinary sanction and as such is not a grievable issue. Do not put in any more requests on this matter." *Id.*

On January 5, 2009, Plaintiff filed an Inmate Request Form stating that "the grievant has the right to appeal any decision by the grievance committee to the highest level for confirmation of such determination." (Dkt. No. 1 at 43.) Defendant Monell replied that Plaintiff should "read minimum standards—once the action requested has been met-there is no grounds for appeal. Request for grievance is denied. Do not put in any more requests on this matter ." *Id.*

On January 5, 2009, Plaintiff wrote to the Commission of Corrections again. He stated that he was being illegally denied the right to file grievances and that

Defendant Monell "attempted to intimidate me." (Dkt. No. 1 at 19.) In a separate letter, he stated that his "grievance is not in regards to any disciplinary sanctions, but in fact an illegal local procedural practice at Tioga County Jail." (Dkt. No. 1 at 29.) He stated that he had been deprived of bedding, food, medical care, visits, and mail without due process. *Id.* at 29–30.

On January 8, 2009, Plaintiff filed an Inmate Request Form stating that he wanted to file a grievance about "the issue of periodicals and the donation/reading of them." (Dkt. No. 1 at 51.) A sergeant (signature illegible) responded that "this is not a grievable issue-this is a requestable issue which will be denied due to security problems encountered in the D-pod housing unit involving the newspaper. Donations of books and magazines are allowed-you also are allowed to release property to persons outside of the jail." *Id.* at 52.

Plaintiff filed this action on January 21, 2009. (Dkt. No. 1.) Defendants now move for summary judgment. (Dkt. No. 30.) Plaintiff has opposed the motion. (Dkt. No. 32.) Defendants have filed a reply. (Dkt. No. 36.)

## II. APPLICABLE LEGAL STANDARDS

### A. Legal Standard Governing Motions for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2). The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. Only after the moving party has met this burden is the non-moving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin v. Goord,* 467 F.3d 263, 272–73 (2d Cir.2006). The nonmoving party must do more than "rest upon the mere allegations ... of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86 (1986). Rather, a dispute regarding a material fact is *genuine* "if the

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material [FN2] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino,* 542 F.3d 290, 309 (2d Cir.2008).

> FN2. A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson,* 477 U.S. at 248.

**B. Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

**\*6** To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on the allegations of the plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment." *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270, 273–74 (2d Cir.1968) [citations omitted]; *accord, Katz v. Molic,* 128 F.R.D. 35, 37–38 (S.D.N.Y.1989) ("This Court finds that ... a conversion [of a Rule 56 summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties."). Accordingly, it is appropriate to summarize the legal standard governing Federal Rule of Civil Procedure 12(b)(6) motions to dismiss.

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U .S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim

for relief ... requires the ... court to draw on its judicial experience and common sense ... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir.2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949.

**III. ANALYSIS**

Defendants argue that they are entitled to summary judgment because (A) Plaintiff refused to cooperate with his deposition; (B) Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA") regarding the November 3 excessive force incident "and other claims such as lack of toilet paper"; (C) Plaintiff has failed to state an Eighth Amendment conditions of confinement claim; (D) Plaintiff's allegations regarding the lack of bedding do not state a due process claim; (E) Plaintiff has failed to state a claim that he was denied access to the courts; and (F) Plaintiff has not alleged that Defendants Howard or Hollenbeck were personally involved in any alleged constitutional violation.

**A. Deposition**

**\*7** Defendants move, pursuant to Federal Rule of Civil Procedure 37, to dismiss this action because Plaintiff unilaterally ended his deposition before answering any substantive questions. (Dkt. No. 30–12 at 10–11.) In the alternative, Defendants request an order precluding Plaintiff from offering sworn testimony in opposition to any motion brought by Defendants or at trial. *Id.* at 11. I

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

find that Defendants' motion is untimely.

This Court's Mandatory Pretrial Discovery and Scheduling Order, issued on March 31, 2009, granted Defendants permission to depose Plaintiff. The order stated that "[t]he failure of the plaintiff to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action pursuant to [Rule] 37." (Dkt. No. 21 at 3 ¶ D.) The order also noted that "any motion to compel discovery in the case must be filed not later than ten (10) days after the deadline for completing discovery." [FN3] *Id.* at 4 n. 5. The order set July 29, 2009, as the deadline for completing discovery. *Id.* at 4 ¶ A.

> FN3. Effective January 1, 2010, the deadlines in the local rules were amended. The local rule now requires that discovery motions be filed no later than fourteen days after the discovery cut-off date. Local Rule 7.1(d)(8).

On July 2, 2009, Defendants requested permission to depose Plaintiff. (Dkt. No. 22.) The Court denied the motion as moot, noting that permission had already been granted. (Dkt. No. 23.) On July 31, 2009, Defendants requested an extension of the discovery cut-off date to allow them time to take Plaintiff's deposition. (Dkt. No. 24.) The Court granted Defendants' request and extended the discovery deadline to September 19, 2009. (Dkt. No. 27.)

On September 14, 2009, Defendants conducted Plaintiff's deposition. (Dkt. No. 30–4 at 9–17.) When defense counsel began asking Plaintiff about his criminal history, Plaintiff stated "[y]ou're browbeating me here, and I'll write to the judge and tell him why I didn't cooperate." *Id.* at 15:14–15. Plaintiff then ended the deposition. *Id.* at 15:20–22. No questions were asked or answered about the events at issue in this action.

Discovery in this case closed on September 19, 2009. Defendants did not file a motion to compel Plaintiff's deposition or for sanctions until they filed the pending motion on October 27, 2009. Because Defendants did not file their motion within ten days of the discovery cut-off date or request an extension of time in which to file a discovery motion, I recommend that their motion to

dismiss the case as a sanction for Plaintiff's refusal to cooperate with his deposition be denied.

**B. Exhaustion of Administrative Remedies**

Defendants argue that Plaintiff's claims regarding the November 3, 2008, alleged use of excessive force and the alleged failure to provide medical care after the incident must be dismissed because Plaintiff failed to exhaust his administrative remedies. (Dkt. No. 30–12 at 2–3.) Defendants are correct.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). In order to properly exhaust administrative remedies under the PLRA, inmates are required to complete the administrative review process in accordance with the rules applicable to the particular institution to which they are confined. *Jones v. Bock,* 549 U.S. 199, 218 (2007).

**\*8** Tioga County Jail has an inmate grievance procedure. (Dkt. No. 30–10 at 8–11.) Under the procedure, the Corrections Officer assigned to the inmate's housing unit initially receives complaints either verbally or in writing and attempts to resolve the complaint informally. *Id.* at ¶ 1.2(A)(1–2). If the complaint cannot be resolved informally, the inmate files a written complaint form, which is forwarded to the Shift Supervisor. *Id.* at ¶ 1.2(A) (3–4). If the Shift Supervisor cannot resolve the complaint, the complaint is forwarded to the Grievance Coordinator, who provides the inmate with a grievance form. *Id.* at ¶ 1.2(A)(5–8). The Grievance Coordinator is responsible for investigating and making a determination on the grievance and must give a written copy of his or her decision to the inmate. *Id.* at ¶ 1.2(A)(9). This written decision must be issued within five business days of receipt of the grievance. *Id.* at 1.3(C). If the inmate does not accept the Grievance Coordinator's determination, "an appeal will be forwarded to the Jail Chief Administrative

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

Officer." *Id.* at ¶ 1.2(A)(11). The inmate must appeal within two business days of receipt of the Grievance Coordinator's determination. *Id.* at ¶ 1.3(D). At the request of the inmate, a copy of the appeal will be mailed by the Jail Administrator to the Commission of Corrections. *Id.* at ¶ 1.2(A)(13). The Jail Administrator must make a determination within two working days. *Id.* at ¶ 1.3(E). The inmate may appeal within three business days of receipt of the decision to the Commission of Corrections. *Id.* at ¶ 1.3(F).

Here, Plaintiff did not file a grievance regarding the alleged use of excessive force on November 3, 2008. (Dkt. No. 30–11 ¶ 6.) Therefore, he did not exhaust his administrative remedies.

Plaintiff's failure to exhaust, however, does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a prisoner has failed to exhaust his available administrative remedies. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004).[FN4]

> FN4. The Second Circuit has not yet decided whether the *Hemphill* rule has survived the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81 (2006), in which the Supreme Court held that each step of an available grievance procedure must be "properly" completed before a plaintiff may proceed in federal court. *Chavis v. Goord,* No. 07–4787–pr, 2009 U.S.App. LEXIS 13681, at *4, 2009 WL 1803454, at *1 (2d Cir. June 25, 2009).

First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did

not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

**\*9** Here, as discussed above, administrative remedies were available to Plaintiff. Defendants preserved the exhaustion defense by raising it in their answer. (Dkt. No. 19 at ¶¶ 8–10.) Plaintiff appears to argue that Defendants are estopped from asserting the defense or that special circumstances exist justifying the failure to exhaust. Specifically, Plaintiff states that exhausting his administrative remedies would have been futile and "may have caused more harm to the plaintiff" because the officers who allegedly assaulted him "are the persons that operate and give the decisions" regarding grievances. (Dkt. No. 32 at 1.)

Plaintiff's explanation is belied by his actual conduct. Plaintiff alleges that Defendant Marsh was involved in the use of excessive force. (Dkt. No. 1 at 9.) Despite this fact, Plaintiff filed a grievance three weeks after the incident complaining about Defendant Marsh's conduct during a disciplinary hearing. (Dkt. No. 1 at 23–24.) This indicates that Plaintiff was not, in fact, afraid to file grievances against the Defendants who allegedly assaulted him and denied him medical care. Thus, Plaintiff has not plausibly alleged that special circumstances prevented him from exhausting his administrative remedies. Therefore, I find that Plaintiff failed to exhaust his administrative remedies regarding the alleged use of excessive force and I recommend that the Court dismiss that claim.

**C. Eighth Amendment Conditions of Confinement**

Plaintiff alleges that Defendants violated his Eighth Amendment rights by removing his personal property, taking away his bedding and mattress during the day, allowing him to shower only if he remained handcuffed and shackled, and providing him with only two sheets of toilet paper. (Dkt. No. 1 at 9–10.) Defendants move for summary judgment of this claim. (Dkt. No. 30–12 at 5.)

The Eighth Amendment to the United States Constitution imposes on jail officials the duty to "provide

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526–27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer,* 511 U.S. at 834. To prove the objective component of an Eighth Amendment conditions of confinement claim, a prisoner must show that the defendant's "act or omission ... result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer,* 511 U.S. at 834. Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Specifically, an inmate must show that he was deprived of a "single, identifiable human need such as food, warmth, or exercise." *Wilson v. Seiter,* 501 U.S. 294, 304 (1991). Here, Plaintiff does not allege that he was deprived of any human need. He was provided with a mattress and blankets at night, had the opportunity to shower, and received toilet paper. Although his conditions may not have been pleasant, the Eighth Amendment "does not mandate comfortable prisons." *Farmer,* 511 U.S. at 932 (citing *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)). Therefore, I recommend that the Court grant Defendants' motion and dismiss Plaintiff's conditions of confinement claim.

**D. Due Process**

1. *Bedding*

**\*10** Defendants construe Plaintiff's complaint as asserting a claim that the removal of his bedding during the day violated his right to due process. Defendants argue that this claim should be dismissed. (Dkt. No. 30–12 at 5–6.) Defendants are correct.

An individual claiming that he was deprived of an interest in property "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577 (1972). Plaintiff had not legitimate claim of entitlement to possessing bedding during the day. Therefore, I recommend that the Court dismiss this claim.

2. *Disciplinary Hearing*

Plaintiff appears to allege that Defendant Marsh deprived him of due process by conducting a biased disciplinary hearing. (Dkt. No. 1 at 10.) Defendants have not addressed this claim. I find that it is subject to *sua sponte* dismissal.

In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law. *Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000).

An inmate has a liberty interest in remaining free from a confinement or restraint where (1) the state has granted its inmates, by regulation or statute, an interest in remaining free from that particular confinement or restraint; and (2) the confinement or restraint imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995); *Tellier,* 280 F.3d at 80; *Frazier v. Coughlin,* 81 F.3d 313, 317 (2d Cir.1996).

Assuming *arguendo* that the state has granted inmates in county jails an interest in remaining free from keeplock confinement, the issue is whether Plaintiff's confinement imposed an "atypical and significant hardship" on him in relation to the ordinary incidents of prison life. Courts in the Second Circuit have routinely declined to find a liberty interest where an inmate's keeplock confinement is an "exceedingly short" period, less than thirty days, and there is no indication that the inmate suffered any "unusual conditions" during the confinement. *Anderson v. Banks,* No. 06–Cv–0625, 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 7, 2008) ("Confinements in ... keeplock of less than thirty days will not suffice to demonstrate a protected liberty interest absent other extraordinary circumstances of the confinement demonstrating that it was atypical or significant for other reasons.") (Sharpe, J.) (Homer, M.J.).[FN5]

     **FN5.** The Court will provide Plaintiff with a

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

copy of this unpublished decision in accordance with the Second Circuit's decision in *LeBron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

Here, Defendant Marsh sentenced Plaintiff to twenty-eight days of keeplock after the November 12, 2008, hearing that followed the alleged excessive force incident. (Dkt. No. 1 at 34.) Defendant Marsh sentenced Plaintiff to fourteen days of keeplock after the December 17, 2008, hearing regarding Plaintiff's alleged use of another inmate's stamps. (Dkt. No. 1 at 37.) There is no indication that Plaintiff suffered any unusual conditions during these keeplock confinements. Notably, Plaintiff's allegations regarding the removal of his bedding occurred not during these keeplock sentences, but rather during earlier administrative segregation periods in October and November. (Dkt. No. 1 at 8–10.) Thus, Plaintiff has not alleged facts plausibly suggesting, or raised a triable issue of fact, that he was deprived of a liberty interest. Therefore, I recommend that the Court dismiss Plaintiff's due process claim against Defendant Marsh *sua sponte.*

**E. Access to the Courts**

**\*11** Defendants argue that Plaintiff's claims regarding Tioga County Jail's legal mail procedures must be dismissed because (1) Plaintiff has not alleged the personal involvement of any Defendant; and (2) Plaintiff has not alleged any actual harm resulting from the procedures. (Dkt. No. 36–3 at 1.) Defendants did not raise this argument in their moving papers. Normally, due process would thus require that I disregard the argument or give Plaintiff an opportunity to file a sur-reply. Here, however, Plaintiff addressed this issue in his opposition despite Defendants' failure to raise it initially. (Dkt. No. 32 at 1.) Moreover, even if he had not, I would recommend that the Court dismiss the claim *sua sponte.*

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). "A prisoner has a constitutional right of access to the courts for the purpose of presenting his claims, a right that prison officials cannot unreasonably obstruct and that states have affirmative obligations to assure." *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986)

(citing *Bounds v. Smith,* 430 U.S. 817, 821–23 (1977)). This right of access, however, guarantees a prisoner "no more than reasonable access to the courts." *Herrera v. Scully,* 815 F.Supp. 713, 725 (S.D.N.Y.1993) (citing *Pickett v. Schaefer,* 503 F.Supp. 27, 28 (S.D.N.Y.1980)). A claim for reasonable access to the courts under § 1983 requires that an inmate demonstrate that the alleged act of deprivation "actually interfered with his access to the courts or prejudiced an existing action." *Id.* (citations omitted). Courts have not found an inmate's rights to be violated when the deprivation merely delays work on his legal action or communication with the court. *Id.* To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating both (1) that the defendant acted deliberately and maliciously, and (2) that the plaintiff suffered an actual injury. *Lewis v. Casey,* 518 U.S. 343, 353 (1996); *Howard v. Leonardo,* 845 F.Supp. 943, 946 (N.D.N.Y.1994) (Hurd, M.J.).

Here, Plaintiff has not raised a triable issue of fact that he suffered any actual injury. In his "notice of intention," he stated that the facility's mail policies *"could* cause a great effect" and *"could* cause irreparable harm" to two pending *habeas corpus* cases. (Dkt. No. 1 at 10, emphasis added.) In his opposition to the motion for summary judgment, Plaintiff states that he "suffered the loss of one of the court actions" because he could not mail a brief. (Dkt. No. 32 at 1.) However, I note that this statement is not "evidence" because Plaintiff's opposition was not signed under penalty of perjury and does not contain any other language bringing it into substantial compliance with 28 U.S.C. § 1746. *See, LeBoeuf, Lamb, Greene & MacCrae, L.L.P. v. Worsham,* 185 F.3d 61, 65–66 (2d Cir.1999). Therefore, I recommend that Plaintiff's claim regarding legal mail be dismissed.

**F. Personal Involvement**

**\*12** Defendants argue that Plaintiff has failed to allege personal involvement by Defendants Howard or Hollenbeck. (Dkt. No. 30–12 at 11–12.) Defendants are correct.

" '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' " *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (quoting *Moffitt v. Town of Brookfield,*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

950 F.2d 880, 885 (2d Cir.1991)).[FN6] In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant.[FN7] If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN8] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN9] Rather, supervisory personnel may be considered "personally involved" if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995).[FN10]

FN6. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087 (1978); *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

FN7. *Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

FN8. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

FN9. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

FN10. The Supreme Court's decision in *Ashcroft v. Iqbal,* ——U.S. ——, 129 S.Ct. 1937 (2009) arguably casts in doubt the continued viability of some of the categories set forth in *Colon. See Sash v. United States,* —— F.Supp.2d ——, No. 08–CV–116580, 2009 U.S. Dist. LEXIS 116580, at *32–39, 2009 WL 4824669, at*10–11 (S.D.N.Y. Dec. 15, 2009). Here, the Court will

assume *arguendo* that all of the *Colon* categories apply.

The only allegation in the complaint regarding Defendant Hollenbeck is that he issued an Inmate Rule Infraction Notice to Plaintiff on October 30, 2008. (Dkt. No. 1 at 31.) Plaintiff has not alleged any facts plausibly suggesting, or raised a triable issue of fact, that Defendant Hollenbeck's conduct violated Plaintiff's constitutional rights. Therefore, I recommend that any claims against Defendant Hollenbeck be dismissed.

The complaint's only reference to Defendant Howard is in the caption of the "notice of intention." (Dkt. No. 1 at 7.) Plaintiff could, perhaps, have argued that, as Sheriff, Defendant Howard was responsible for creating or allowing to continue unconstitutional policies. However, Plaintiff did not allege any facts plausibly suggesting, or raise a triable issue of fact, that Defendant Howard was responsible for the policies about which Plaintiff complains. Even if he had, as discussed above, Plaintiff has not provided sufficient evidence for any of his claims regarding those policies to survive summary judgment. Therefore, I recommend that any claims against Defendant Howard be dismissed.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 30) be **GRANTED;** and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Anderson v. Banks,* No. 06–Cv–0625, 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 7, 2008) in accordance with the Second Circuit's decision in *LeBron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

**\*13** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. ***FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.*** *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989));

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907227 (N.D.N.Y.)

(Cite as: 2010 WL 3907227 (N.D.N.Y.))

28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a).

N.D.N.Y.,2010.

Stewart v. Howard
Not Reported in F.Supp.2d, 2010 WL 3907227
(N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907137 (N.D.N.Y.)

(Cite as: 2010 WL 3907137 (N.D.N.Y.))



Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Jesse L. STEWART, Jr., Plaintiff,
v.
Gary HOWARD; D. Monell; N. Marsh; D.
Spangenburg; D. Swarts; E. Hollenbeck; J. Edwards;
and D. Russell, Defendants.
No. 9:09–CV–69 (GLS/GHL).

Sept. 30, 2010.
Jesse L. Stewart, Jr., Marienville, PA, pro se.

Office of Frank W. Miller, Frank W. Miller, Esq., Michael
J. Livolsi, Esq., of Counsel, East Syracuse, NY, for the
Defendants.

## MEMORANDUM–DECISION AND ORDER

GARY L. SHARPE, District Judge.

### I. *Introduction*

**\*1** Plaintiff Jesse L. Stewart, an inmate at Forest State
Correctional Institution, Forest County, Pennsylvania,
brings this action under 42 U.S.C. § 1983, alleging that
defendants Tioga County Jail employees violated his
Eighth and Fourteenth Amendment rights during his
incarceration at Tioga County Jail. (*See* Compl., Dkt. No.
1.) Defendants moved for summary judgment and for
dismissal based on, among other things, Stewart's refusal
to cooperate at his deposition. (Dkt. No. 30.) On April 26,
2010, Magistrate Judge George H. Lowe issued a Report
and Recommendation Order (R & R) recommending that
defendants' motion for dismissal as a discovery sanction
be denied but that defendants' motion for summary
judgment be granted. (Dkt. No. 38.) Pending are Stewart's
objections to the R & R. (Dkt. No. 39.) For the reasons
that follow, the court adopts the R & R in its entirety.

### II. *Standard of Review*

Before entering final judgment, this court routinely
reviews all report-recommendations in cases it has
referred to a magistrate judge. If a party has objected to
specific elements of the magistrate judge's findings and
recommendations, this court reviews those findings and
recommendations de novo. *See Almonte v. N.Y. State Div.
of Parole,* No. 04–cv–484, 2006 WL 149049, at *6–7
(N.D.N.Y. Jan.18, 2006).* In those cases where no party
has filed an objection, or only a vague or general objection
has been filed, this court reviews the findings and
recommendations of a magistrate judge for clear error. *See
id.*

Summary judgment shall be granted "if the pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106
S.Ct. 2505, 91 L.Ed.2d 202 (1986)* (citing FED. R. CIV.
P. 56(c)); *see also Globecon Group, LLC v. Hartford Fire
Ins. Co.,* 434 F.3d 165, 170 (2d Cir.2006).* In considering
a motion for summary judgment, the court must "view the
evidence in the light most favorable to the non-moving
party and draw all reasonable inferences in its favor ...."
*Allen v. Coughlin,* 64 F.3d 77, 79 (2d Cir.1995)* (citation
omitted). The initial burden is on the moving party to
inform the court of the basis for its motion, and identify
those portions of the pleadings, affidavits, and discovery
and disclosure materials on file that it believes
"demonstrate the absence of a genuine issue of material
fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106
S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also SEC v. Kern,
425 F.3d 143, 147 (2d Cir.2005).* "A 'genuine' dispute
over a material fact only arises if the evidence would
allow a reasonable jury to return a verdict for the
nonmoving party." *Dister v. Cont'l Group, Inc.,* 859 F.2d
1108, 1114 (2d Cir.1988)* (citation omitted). And while
the court remains obliged to read a pro se movant's
supporting papers liberally and "interpret them to raise the
strongest arguments that they suggest," *Burgos v. Hopkins,
14 F.3d 787, 790 (2d Cir.1994),* "[c]onclusory allegations,
conjecture, and speculation ... are insufficient to create a
genuine issue of fact," *Kerzer v. Kingly Mfg.,* 156 F.3d
396, 400 (2d Cir.1998).* Moreover, pro se status "does not

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907137 (N.D.N.Y.)

(Cite as: 2010 WL 3907137 (N.D.N.Y.))

exempt a party from compliance with relevant rules of procedural and substantive law" and courts cannot read into pro se submissions inconsistent claims or claims not suggested by those submissions. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (citations and internal quotation marks omitted).

### III. *Discussion*

**\*2** Construed liberally, Stewart's objections specifically challenge Judge Lowe's conclusions that: (1) Stewart failed to exhaust his administrative remedies regarding his excessive force and failure to provide medical care claims; (2) Stewart's claims regarding the amount of toilet paper, conditions of showering, and removal of bedding during the day failed to make out a viable Eighth Amendment claim; (3) Stewart had no protected liberty interest entitling him to additional process prior to the imposition of disciplinary sanctions; and (4) Stewart failed to raise any triable issue of fact as to his claim for denial of access to the courts. Consequently, the court will review those conclusions de novo.

### A. *Failure to Exhaust Administrative Remedies*

Stewart objects to Judge Lowe's conclusion that his Eighth Amendment excessive force and denial of medical care claims are barred by his failure to exhaust his administrative remedies under the Prisoner Litigation Reform Act of 1995 (PLRA). Read liberally, Stewart's argument is threefold. First, Stewart argues that the grievance process at Tioga County Jail was such that any appeal he filed would be futile and accordingly that his administrative remedies were not "available" to him under the meaning of 42 U.S.C. § 1997(e). (*See* Pl. Objections at 2, Dkt. No. 39.) This argument is without merit. Even if the court were to accept the allegation that following the grievance procedures would ultimately have lead to an unfair denial of Stewart's claims at the institutional level, perceived futility of the process "does not render the grievance system 'unavailable.' " *Yeldon v. Ekpe,* 159 Fed. Appx. 314, 316 (2d Cir.2005) (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).

Second, Stewart argues that he was not required to use the prison system to exhaust his remedies because the prison grievance system cannot award monetary damages. (*See* Pl. Objections at 3, Dkt. No. 39.) However, "[e]ven

when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (citing *Booth v. Churner,* 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). Accordingly, this argument also fails.

Finally, Stewart claims that he was threatened and did not file grievances at the institutional level for fear of being retaliated against. (*See* Pl. Objections at 2, Dkt. No. 39; *see also* Compl. at 10, Dkt. No. 1; Pl. Resp. at 1, Dkt. No. 32.) The Second Circuit has held that threats by prison officials may estop those officials from raising the affirmative defense of failure to exhaust administrative remedies. *See, e.g., Macias v. Zenk,* 495 F.3d 37, 44–45 (2d Cir.2007). The estoppel argument can take two forms: either that the actions of a prison official made all administrative remedies unavailable, or that those actions made only some remedies unavailable. *See Hemphill,* 380 F.3d at 687. Stewart can only be arguing the latter. His objections state that he did complain of the use of excessive force and the failure to provide medical care in his letters to the Sheriff, Under Sheriff, and Commissioner. (*See* Pl. Objections at 2, Dkt. No. 39.) However, a review of those letters reveals that they are entirely bereft of any mention of the excessive force or failure to provide medical treatment claims, excepting two mentions—without any detail or request for action—of a civil claim for excessive force Stewart was pursuing against defendant Marsh. (*See* Compl. at 16–30, Dkt. No. 1.) As a consequence, even if the court were to presume Stewart's remedies at the prison level were unavailable, there is no question of fact as to whether Stewart failed to exhaust all his available remedies. Stewart could have raised those issues outside the local grievance process but failed to do so. Thus, defendants are entitled to judgment as a matter of law on those claims.

### B. *Eighth Amendment Conditions of Confinement Claims*

**\*3** Stewart further argues that, contrary to Judge Lowe's conclusions, his conditions of confinement "shock the mind" and that he was subject to "barbaric," "draconian," and "extreme treatment" sufficient to make out cruel and unusual punishment under the Eighth Amendment. (Pl. Objections at 2–3, Dkt. No. 39.) Stewart

Not Reported in F.Supp.2d, 2010 WL 3907137 (N.D.N.Y.)

(Cite as: 2010 WL 3907137 (N.D.N.Y.))

alleged in his complaint that for ten days he was denied bedding between the hours of 6:30 am and 11:00 pm, denied his personal property, allowed to shower only while in restraints, and provided only two sheets of toilet paper per defecation. (*See* Compl. at 8–9, Dkt. No. 1.) Judge Lowe was correct to find that these deprivations are not sufficiently serious to support an Eighth Amendment claim. (*See* R & R at 17–18, Dkt. No. 38.) The Supreme Court has held that

[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Stewart's complaint and response fail to allege either the presence of an excessive risk to his health or safety or that any prison official was aware of such a risk. Accordingly, Judge Lowe's finding is adopted and Stewart's conditions of confinement claims are dismissed .[FN1]

> **FN1.** Stewart now claims via his objections that he was denied blankets at night (in contradiction of his complaint), that he had unspecified "medical life threatening ailments" which could have caused him to die in the cold without blankets, and that there was a risk he would slip and fall while wearing restraints in the shower. (*See* Pl. Objections at 4, Dkt. No. 39.) The court declines to consider these new claims at this late stage. *See Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir.1999).

**C. Due Process**

Stewart's objections reassert the claim that his due process rights were violated due to a biased disciplinary hearing and generally flawed grievance system at Tioga County Jail. (*See* Pl. Objections at 2, Dkt. No. 39.) As the R & R observed, to establish a procedural due process claim, an inmate must show that he possessed a state granted interest in remaining free from the alleged

deprivation and that the deprivation imposed " 'an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' " (*See* R & R at 19, Dkt. No. 38 (quoting *Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995)).) Here, the conditions of Stewart's heightened confinement are not disputed by the parties and there is no evidence or allegation that the conditions of confinement were atypical in relation to other administrative confinements imposed in the ordinary course of prison administration. Thus, summary judgment is appropriate. *See Davis v. Barrett,* 576 F.3d 129, 134 (2d Cir.2009). In the absence of unusually harsh conditions, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection." *Id.* at 133 (citation omitted). Given that Stewart's confinement was substantially shorter than 101 days, the court agrees with Judge Lowe's conclusion that Stewart possessed no protected liberty interest sufficient to support a procedural due process claim and adopts the recommendation that Stewart's due process claims be dismissed.

**D. Access to the Courts**

*\*4* Lastly, Stewart argues that Judge Lowe erred in finding that Stewart failed to raise any triable issue of fact as to an injury suffered by his restricted use of the mail system. (*See* Pl. Objections at 4, Dkt. No. 39.) Stewart claims that his limited use of the mail prevented him from being heard in support of a habeas corpus petition, which resulted in an unfavorable outcome. (*See id.; see also* Pl. Resp. at 1, Dkt. No. 32.) Other than those two places, no allegation of any actual injury stemming from the mail restrictions has been made in Stewart's submissions. Judge Lowe was correct in observing that Stewart's response is unsworn and it cannot be treated as an affidavit for summary judgment purposes. (*See* R & R at 21, Dkt. No. 38.) Accordingly, the response's contents cannot constitute "evidence" sufficient to create a triable issue of fact. (*See* Pl. Resp. at 1, Dkt. No. 32.) The court is mindful of Stewart's pro se status and observes that even if his response could be construed as an affidavit, the statement therein is too conclusory to create a triable issue of fact regardless of his non-compliance with 28 U.S.C. § 1746. Stewart references no specific facts regarding the case he allegedly lost as a consequence of the denial of sufficient postage. Mere assertions unsupported by any specifics,

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3907137 (N.D.N.Y.)

(Cite as: 2010 WL 3907137 (N.D.N.Y.))

even when contained in an affidavit, are insufficient to create the material dispute necessary to defeat a motion for summary judgment. *See* *Major League Baseball Props., Inc. v. Salvino, Inc.,* 542 F.3d 290, 310 (2d Cir.2008). Therefore, the court adopts Judge Lowe's recommendation that Stewart's denial of access to the courts claim be dismissed.[FN2]

> [FN2.] The court observes in passing that even if it were willing to consider new evidence in Stewart's sworn objections, Stewart's statement therein regarding his lost legal case is no more helpful in identifying what case he lost or providing substantiation to the claim that he lost the case as a consequence of limited postage. (*See* Pl. Objections at 4, Dkt. No. 39.)

**E. *Remaining Recommendations***

Because Stewart has not objected to the remaining recommendations, the court has reviewed those recommendations for clear error and finds none. Accordingly, the remainder of the R & R is adopted.

### IV. *Conclusion*

**WHEREFORE,** for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge George H. Lowe's April 26, 2010 Report and Recommendation Order (Dkt. No. 38) is **ADOPTED** in its entirety; and it is further

**ORDERED** that defendants' motion to dismiss based on Stewart's refusal to cooperate with his deposition (Dkt. No. 30) is **DENIED;** and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 30) is **GRANTED** and Stewart's claims are **DISMISSED;** and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide copies of this Memorandum–Decision and Order to the parties.

**IT IS SO ORDERED.**

N.D.N.Y.,2010.

Stewart v. Howard
Not Reported in F.Supp.2d, 2010 WL 3907137 (N.D.N.Y.)
END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.


Not Reported in F.Supp.2d, 2009 WL 3734343 (W.D.N.Y.)

(Cite as: 2009 WL 3734343 (W.D.N.Y.))

**H**

Only the Westlaw citation is currently available.
United States District Court,

W.D. New York.
Ronnie COLE, Plaintiff,
v.
Brian FISCHER, et al., Defendants.
No. 08CV512.

Nov. 4, 2009.
Ronnie Cole, Rome, NY, pro se.

Delia Dianna Cadle, NYS Attorney General's Office, Buffalo, NY, for Defendants.

**Order**

HUGH B. SCOTT, United States Magistrate Judge.

**\*1** Before the Court is plaintiff's motion for summary judgment (Docket No. 44 FN1), essentially for partial summary judgment as to one claim. Responses to this motion initially were due by May 15, 2009, and replies were due by May 25, 2009 (Docket No. 45), but this schedule was extended with responses due May 20, 2009, and any replies by June 5, 2009 (Docket No. 50). This motion was held in abeyance pending resolution of other procedural motions (Docket Nos. 56, 79; *see also* Docket Nos. 57, 73, 76, 89), which were decided on September 18, 2009 (Docket No. 97). On April 13, 2009, the parties consented to proceed before the undersigned as Magistrate Judge (Docket No. 43).

> FN1. In support of this motion, plaintiff submits his affidavit, memorandum of law, Docket No. 44; his statement of uncontested material facts, Docket No. 65; his affirmation in reply to defendants' declaration, Docket No. 66; plaintiff's second memorandum in law, Docket No. 67; exhibits of documents from the manufacturer of the underpad, Docket Nos. 69, 70; his affidavit, Docket No. 92; his supplemental reply affirmation, Docket No. 98;

his third memorandum of law, Docket No. 99; and his second statement of uncontested material facts, Docket No. 100 (repeating the statements made in the initial statement).

In opposition, defendants submit their attorney's declaration, Docket No. 54; their memorandum of law in opposition, Docket No. 55.

**BACKGROUND**

In this § 1983 action, plaintiff, a *pro se* inmate, alleges that he suffered second degree burns from a makeshift heating pad made by one of the defendants in 2007, the result of alleged deliberate indifference to his medical needs in violation of his Eighth Amendment rights (*see* Docket No. 59, Pl. Br. at 1). He also alleges failure to protect, failure to act to remedy a wrong, creating and allowing an unconstitutional custom, failure to train, supervise, manage subordinates, deficient management in allowing continued retaliation of false misbehavior reports, and violations of Eighth and Fourteenth Amendments (*see* Docket No. 1, Compl.), but he appears not to assert these claims in his present summary judgment motion. Defendants filed separate Answers (Docket Nos. 20–27, 29–31, 33–36).

Plaintiff's present motion is the deliberate indifference claim arising from the burns he allegedly suffered from the makeshift heating pad. According to his uncontested statement of material facts (*see* Docket Nos. 65, 100), *see also* W.D.N.Y. Loc. Civ. R. 56.1(b) (papers opposing summary judgment "shall" include statement of material facts), (c) (facts in statement deemed admitted unless controverted by opponent's statement), on December 29, 2007, plaintiff was an inmate in the regional medical unit of Wende Correctional Facility (*e.g.,* Docket No. 65, Pl. Statement ¶ 1). Registered nurse defendant R. Nagel FN2 provided plaintiff with the makeshift pad, using a blue "chux" or "Chuck" pad (a disposable underpad), dampening it, rolling it into a ball, taping it together, and placing it in a microwave oven for what plaintiff terms "an extended period of time" (*id.* ¶ 3; Docket No. 92, Pl. Aff.

Not Reported in F.Supp.2d, 2009 WL 3734343 (W.D.N.Y.)

(Cite as: 2009 WL 3734343 (W.D.N.Y.))

¶ 10). Nagel then applied this pad on plaintiff's back causing second degree burns to plaintiff's back (Docket No. 65, Pl. Statement ¶ 3). Plaintiff points out that Nagel did not manufacture heating pads or test them pursuant to medical device standards (*id.* ¶ 4) and Nagel used materials (blue chux pad and surgical tape) not intended to be used as a heating pad (*id.* ¶ 5). Plaintiff next claims that the makeshift pad was adulterated under the Federal Food, Drug and Cosmetic Act (*id.* ¶ 6).

> FN2. Or "R Negal," as claimed by plaintiff, *see* Docket No. 65, Pl. Statement ¶¶ 2–4.

In a separate Affidavit (Docket No. 92), plaintiff states that, on December 28, 2007, defendant nurse practitioner J. Wrest previously prescribed a warm/hot pack be applied to plaintiff's back, but failed to know if and how her written order would be complied with. Plaintiff contends that Nagel disregarded this order the next day by making the makeshift heating pad. (Docket No. 92, Pl. Aff. ¶ 3.) Here, plaintiff alleges that defendants failed in their duty that "higher level officials" (such as the Commissioner, chief medical officer, and superintendent) owed to inmates of adequate and reasonable care and freedom from serious injury (*id.* ¶ 7). This duty was breached when they allowed a microwave oven, usually used for heating food, to be used for medical purposes (*id.* ¶ 8). He claims that he suffers from permanent scarring (an 8 inch by 4 inch scar) from the burns received from the makeshift pad, which was treated from December 30, 2007, to February 11, 2008, when discontinued by defendant Radder (*id.* ¶ 9). Plaintiff continued to be prescribed pain medication through November 2008 and a skin cream ordered by defendant Dr. Bukowski in June 2008 (*id.*).

**\*2** Defendants deny that plaintiff has presented concrete evidence that he was burned or the cause of any such burn (Docket No. 54, Defs. Atty. Decl. ¶ 5; Docket No. 55, Defs. Memo. at fourth unnumbered page). They argue that plaintiff has not met the standard for deliberate indifference, alleging at most medical malpractice (Docket No. 54, Defs. Atty. Decl. ¶ 6). Defendants intend to move for summary judgment at the conclusion of discovery (*id.* ¶ 7 FN3).

> FN3. Under the current Scheduling Order, Docket No. 38, discovery was to conclude on September 2, 2009, and dispositive motions will be due by December 2, 2009. No one has sought extension of these deadlines.

DISCUSSION

I. Applicable Standards
A. Motion for Summary Judgment

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Ford v. Reynolds,* 316 F.3d 351, 354 (2d Cir.2003); Fed.R.Civ.P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. *Ford, supra,* 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Lazard Freres & Co. v. Protective Life Ins. Co.,* 108 F.3d 1531, 1535 (2d Cir.) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)), *cert. denied,* 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis in original removed); *McCarthy v. American Intern. Group, Inc.,* 283 F.3d 121, 124 (2d Cir.2002); *Marvel Characters v. Simon,* 310 F.3d 280, 285–86 (2d Cir.2002).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and

Not Reported in F.Supp.2d, 2009 WL 3734343 (W.D.N.Y.)

(Cite as: 2009 WL 3734343 (W.D.N.Y.))

concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56.1(a), (b). The movant is to submit facts in which there is no genuine issue, *id.* R. 56.1(a), while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, *id.* R. 56.1(b). "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying "with specificity" the relevant page or paragraph of the cited authority, *id.* R. 56.1(d). All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, *id.* R. 56.1(c). The purpose of these statements, and the appendix of supporting evidence, *id.* R. 56.1(d), is to summarize and highlight for the Court the material factual issues, the authority in the evidentiary record for the purported facts, and whether the parties believe they are in dispute.

**\*3** One additional factor here is the fact that plaintiff is proceeding *pro se.* As such, this Court must liberally construe his pleadings, *see Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *see also Estelle v. Gamble,* 429 U.S. 97, 106, 107, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

B. Deliberate Indifference

Under the Eighth Amendment, in order to state a claim for inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," *LaGrange v. Ryan,* 142 F.Supp.2d 287, 293 (N.D.N.Y.2001); *see Gamble, supra,* 429 U.S. at 104; *see also Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (the Eighth Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments that "involve the unnecessary and wanton infliction of pain.") (citations omitted); *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994), *cert. denied sub nom. Foote v. Hathaway,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995). "To establish an unconstitutional denial of medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Hathaway, supra,* 37 F.3d at 66

(quoting *Estelle, supra,* 429 U.S. at 104). Mere negligent treatment or malpractice upon a suspect, however, does not create an Eighth Amendment violation, *see Corby v. Conboy,* 457 F.2d 251, 254 (2d Cir.1972).

This claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind. *Hathaway, supra,* 37 F.3d at 66. "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J., dissenting) (quoted in *Hathaway, supra,* 37 F.3d at 66). Plaintiff needs to prove that defendants wantonly intended to cause him to suffer. *Wilson v. Seiter,* 501 U.S. 294, 302, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

II. Application–Deliberate Indifference

Here, plaintiff moved for summary judgment alleging that defendant Nagel was deliberately indifferent to his medical care.

Although defendants contend (in conclusory manner, *cf.* Docket No. 55, Defs. Memo. at fourth unnumbered page) that plaintiff fails to offer concrete evidence of injury or causation (Docket No. 54, Defs. Atty. Decl. ¶ 5), they have not submitted an opposing statement of fact to counter plaintiff's statement, *cf.* W.D.N.Y. Loc. Civ. R. 56.1(b), (c). But a review of plaintiff's moving papers (even factoring in the fact that he is proceeding *pro se* ) shows that he has not established either element for his deliberate indifference claim. As for the objective element, he has not shown that his alleged injuries (second degree burns on his back), are sufficiently serious (such as showing degeneration or extreme pain) to be a constitutional violation. *Gamble* is instructive. In that case, the *pro se* inmate plaintiff Gamble was injured when a bale of cotton fell on him. He alleged that he received deficient care for his injured back. *Gamble, supra,* 429 U.S. at 99–100. In announcing the standard for deliberate indifference to medical condition under the Cruel and Unusual Punishment Clause, *see id.* at 106, the *Gamble* Court rejected the inmate's contention that the fact his back was not x-rayed did not rise to the level of deliberate indifference, that the decision whether to conduct x-rays or not was a question of medical judgment not subject to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3734343 (W.D.N.Y.)

(Cite as: 2009 WL 3734343 (W.D.N.Y.))

constitutional review, *id.* at 107.

**\*4** As for plaintiff's alleged second-degree burns, cases regarding delayed inmate medical treatment are also instructive. Courts in those situations have held that delays in treatment of second-degree burns did not rise to level of deliberate indifference, *see Rios v. Santa Clara County Dep't of Corrections,* No. C02–1815MMC, 2002 WL 1285045 (N.D.Cal. June 5, 2002), at \*2; *Sperow v. Seay,* No. 90 C 1211, 1991 WL 60580, at \*1–2 (N.D.Ill. Apr.15, 1991).

Plaintiff here has not alleged that his condition was rapidly deteriorating or life threatening. *cf. Liscio v. Warren,* 901 F.2d 274, 277 (2d Cir.1990) (distinguishing that case from *Gamble,* finding there that the failure to treat that inmate's back condition did not constitute deliberate indifference). He merely alleges malpractice in applying this created heating pad on his back, asserting that the use of this "pad" violates standards of medical practice (Docket No. 44, Pl. Aff. ¶ 11; *see id.,* Pl. Memo. at 1 (citing New York State cases) or created an inappropriate medical device (Docket No. 65, Pl. Statement ¶¶ 4–6). In fact, plaintiff expressly argues that he has made a prima facie case of malpractice (Docket No. 44, Pl. Memo. at 1–2). But mere negligence is not sufficient to state a claim for deliberate indifference, *see Gamble, supra,* 429 U.S. at 106.

As for the subjective component, plaintiff has not shown that Nagel (or the other defendants) had a sufficiently culpable state of mind to have wanted to cause plaintiff to suffer, *see Wilson v. Seiter, supra,* 501 U.S. at 302. Plaintiff here does not allege that defendant Nagel's actions (negligent at best) were intentional, *see also Sperow, supra,* 1991 WL 60580, at \*2, to establish the subjective component for a deliberate indifference claim.

Thus, plaintiff's motion for (partial) summary judgment as to his deliberate indifference claim (Docket No. 44) is **denied.** Defendants, however, have not yet moved for summary judgment or cross-moved here for dismissal of claims against Nagel and against the other defendants for plaintiff's deliberate indifference claim. This decision only addresses plaintiff's present motion and does not dismiss this claim against Nagel (or any other defendant) at this time.

### III. Supervisory Liability

One of plaintiff's replies indicates his claim that the other defendants had supervisory liability for his injuries due to allowing a cooking microwave oven to be used to heat a makeshift heating pad (*see* Docket No. 92). Plaintiff contends that the "Higher Level Defendant(s)" (such as Bukowski, the Commissioner, the Superintendent, medical supervisory officials) failed to remedy the problem of the use of the makeshift heating pad (*id.* ¶ 11). He contends that these defendants were aware of the use of the microwave oven for this purpose and failed to stop it (*id.*). Plaintiff concludes that these supervisory officials "personally had a job to do, and did not do it" and this failure established their respective deliberate indifference (*id.* ¶ 16, quoting *Hill v. Marshall,* 962 F.2d 1209, 1213 (6th Cir.1992), *cert. denied,* 509 U.S. 903, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993)). But the text quoted by plaintiff from the *Hill* case involved the question of supervisory liability, where the defendant official, the then-deputy superintendent for treatment, had the duty of reviewing inmate complaints and had been found to have abandoned that duty, *Hill, supra,* 962 F.2d at 1213, 1212, and the Sixth Circuit there addressed deliberate indifference later in that opinion, *see id.* at 1214.

**\*5** "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [42 U.S.C.] § 1983," *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir.1991); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994), this is especially required for supervisor liability, *Hernandez v. Keane,* 341 F.3d 137, 144–45 (2d Cir.2003). " 'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983," *Hernandez, supra,* 341 F.3d at 145, quoting *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987). As noted by the Second Circuit in *Hernandez, supra,* 341 F.3d at 145,

"The liability of a supervisor under § 1983 can be shown in one or more of the following ways: (1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom

Not Reported in F.Supp.2d, 2009 WL 3734343 (W.D.N.Y.)

(Cite as: 2009 WL 3734343 (W.D.N.Y.))

that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring. *See Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995) (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994)); *see also Brock,* 315 F.3d at 165–66."

It appears that plaintiff is asserting supervisors' liability under the last category, failure to act on information indicating that unconstitutional acts were occurring, but relying upon this incident and the grievances arising therefrom as the basis for that information. Even assuming these defendants owed plaintiff the duty he describes, as stated above the defendants' failure to act did not cause plaintiff a sufficiently serious injury to state a deliberate indifference claim. This is similar to the deliberate indifference claim rejected against the supervisor of medical staff in another correctional facility considered by the Second Circuit in *Hernandez, supra,* 341 F.3d at 145, with the court rejecting that deliberate indifference of the supervisor can be inferred from the nature and extent of the constitutional violations of the staff he supervised. Plaintiff is not asserting respondeat superior liability, *cf. Monell v. Dep't of Social Serv.,* 436 U.S. 658, 693–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Hill, supra,* 962 F.2d at 1213; *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989). For supervisory officials to be held liable for deliberate indifference, the elements for deliberate indifference must be found. Mere failure by a supervisor to act is insufficient basis to hold supervisor liable, *see Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). The only actions plaintiff points to are his prison grievances following administration of the makeshift pad (*see id.* ¶¶ 11–15, Ex.). The correspondence reproduced in plaintiff's exhibit arises from the internal investigation of his grievance, indicating that, while plaintiff was believed to have suffered no significant or permanent damage, the matter was being investigated and other methods of pain relief were being explored to avoid a repetition of this incident (*id.,* Ex.). In the cases plaintiff cites in support of his contention that deliberate indifference by supervisors is sufficient to establish

liability (*id.* ¶ 16) involve evidence of direct involvement by the supervisors in depriving those inmates of sought care, *Aswegan v. Bruhl,* 965 F.2d 676, 677–78 (8th Cir.1992) (per curiam); or the inmate was asserting supervisory liability from failure to train staff and not liability from the supervisory's direct involvement in the inmate's care, *Walker v. Norris,* 917 F.2d 1449, 1456 (6th Cir.1990). Plaintiff here does not assert any personal involvement by the "higher levels" save their handling of his grievances arising from this incident. This is not sufficient to meet the subjective component for deliberate indifference. Therefore, plaintiff's motion for summary judgment as to these defendants is **denied.** As stated above, this opinion does not address whether claims against these defendants (even for plaintiff's deliberate indifference claim) should be dismissed at this point.

CONCLUSION

**\*6** For the reasons stated above, plaintiff's motion for summary judgment (Docket No. 44) is **denied.**

So Ordered.

W.D.N.Y.,2009.

Cole v. Fischer
Not Reported in F.Supp.2d, 2009 WL 3734343 (W.D.N.Y.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2573007 (N.D.Tex.)

(Cite as: 2010 WL 2573007 (N.D.Tex.))



Only the Westlaw citation is currently available.
**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,

N.D. Texas,
Wichita Falls Division.
Michael Lee DAVIS, Plaintiff,
v.
Brad LIVINGSTON, et al., Defendants.
Civil No. 7:08–CV–007–O.

June 24, 2010.
Michael Lee Davis, Iowa Park, TX, pro se.

*MEMORANDUM OPINION AND ORDER*

REED O'CONNOR, District Judge.

**\*1** This is an action filed pursuant to 42 U.S.C. § 1983 by an inmate confined in the James V. Allred Unit of the Texas Department of Criminal Justice in Iowa Park, Texas. In support of his complaint, Plaintiff alleges the following:

1. he was denied a timely and fair parole review;

2. the interviewing parole officer failed to follow Parole Board rules;

3. parole officials have failed to respond to his request for special parole review;

4. he was denied due process in his parole hearing;

5. his parole file contains materially false and misleading information placed into the file by certain Defendants for sole purpose of harming him;

6. he has been denied equal protection of the law with regard to all claims set forth in his complaint;

7. certain Defendants have engaged in tortuous interference with his plea agreement contracts;

8. breach of his plea agreement by the state, and;

9. he has been subjected to harassment, threats, libel and slander which have exposed him to public hatred and contempt.

*Complaint ¶¶ IV & v. and attachment thereto.* Plaintiff seeks monetary damages and injunctive relief. *Id. at ¶ VI and attachment thereto.*

Plaintiff's complaint regarding his parole hearing and/or eligibility does not state a constitutional claim. There is a crucial difference between the initial grant of parole and the revocation of parole. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). The revocation of parole involves the deprivation of a liberty interest which one has attained, whereas, the initial grant of parole is a conditional liberty which a prisoner desires. *Id.* at 9. If a state's parole system does not create an expectancy of early release, there is no constitutionally protected right to release on parole. *Id.* at 10–11.

With the exception of mandatory supervised release, the Texas parole system does not create an expectancy of release. *E.g. Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir.1995); *Gilbertson v. Texas Bd. of Pardons and Paroles,* 993 F.2d 74, 75 (5th Cir.1993); *Williams v. Briscoe,* 641 F.2d 274, 276–77 (5th Cir.1981). " 'Parole' means the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division." Tex. Gov't Code § 508.001(6)) (West 2010) (formerly Tex.Code Crim. Proc. art. 42.18, § 2(1)(Vernon 1995)). Plaintiff's complaint involves his eligibility for parole. He makes no claim that he was denied mandatory supervised release. *See Complaint ¶ V.* Plaintiff has no liberty interest in release on parole. Because there is no constitutionally protected liberty interest at stake,

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2010 WL 2573007 (N.D.Tex.)

(Cite as: 2010 WL 2573007 (N.D.Tex.))

constitutional due process considerations do not attach to any proceeding involving the Parole Board's consideration of Plaintiff's eligibility for release. *See Gilbertson, 993 F.2d at 75; see also Brown v. Lundgren,* 528 F.2d 1050, 1053 (5th Cir.1976) (finding federal parole system did not create a constitutional liberty interest at that time-later superseded by statute as stated in *Evans v. Dillahunty,* 662 F.2d 522 (8th Cir.1981)).

**\*2** Plaintiff complains that the parole interview officer, Susan Fowler, violated Parole Board rules by giving him a five-year and four month parole denial when the rules allowed a maximum five-year denial. He further claims that Defendants have failed to respond to his request for a special parole review.

Where a violation of state law results in a constitutional violation, a plaintiff may have a cause of action under the Civil Rights Act. *Doe v. Taylor Independent School Dist.,* 15 F.3d 443, 464 (5th Cir.1994) (citing *Miller v. Carson,* 563 F.2d 757, 760 n. 7 (5th Cir.1977) and *Sims v. Adams,* 537 F.2d 829, 831–32 (5th Cir.1976)). However, if no constitutional deprivation is established, there can be no liability under § 1983. Allegations of violations of state law or agency rules, without more, are insufficient to maintain a constitutional claim. *See e.g., Daniels v. Williams,* 474 U.S. 327, 332–33 (1986) (noting that violations of state law do not become constitutional violations just because the defendant is a state official); *Diamond v. Thompson,* 364 F.Supp. 659, 662 (M.D.Ala.1973) (stating that federal courts "will intervene in the administration of the prison system only where it is necessary to preserve constitutional rights."); *Taylor v. Sterrett, 600 F.2d 1135 (5th Cir.1979)* (requiring district court that had intervened on basis of state law violation to discontinue exercise of its jurisdiction and dismiss the cause). Assuming the truth of Plaintiff's allegations, his claims of Parole Board rule violations do not rise to the level of constitutional violations.

Plaintiff alleges that he was denied due process during his parole proceeding and that false information and protest letters were unlawfully included in his Parole Board file and wrongly considered when denying him release on parole. Because an inmate in Texas has no constitutional right to release on parole, Plaintiff cannot prevail in a challenge to his parole review on procedural or substantive due process grounds. *Johnson v. Rodriguez,* 110 F.3d 299, 308–09 (5th Cir.1997). Even where the Parole Board considers false or unreliable information in making a parole decision, no issue of constitutional magnitude arises. *Id.* at 309 n. 13; *see Palmer v. Wyeth,* 163 F.3d 1354 (5th Cir.1998) (unpublished) (lawsuit alleging that Parole Board member placed false information into plaintiff's parole file dismissed because there is no liberty interest in release on parole); *Luken v. Scott,* 71 F.3d 192 (5th Cir.1995) (prisoner's complaint of false information in his file, causing him to be confined to administrative segregation and reducing his good-time earning rate, dismissed because no constitutionally protected liberty interest was implicated). Similarly, Plaintiff's claim that protest letters were included in his file and considered in denying him parole does not state a constitutional claim. *Johnson v. Rodriguez,* 110 F.3d at 306–08.

**\*3** Plaintiff next alleges that he was denied equal protection of the law with regard to all claims set forth in his complaint because he was treated differently from others similarly situated. In general, the Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated alike. *Stefanoff v. Hay Co., Tex.,* 154 F.3d 523, 525–26 (5th Cir.1998). To establish an equal protection claim, a plaintiff must show: (1) that the defendant created two or more classifications of similarly situated plaintiffs that were treated differently; and, (2) that the classification had no rational relation to any legitimate government objective. *Id.* at 526. Strict scrutiny is required of government action which implicates a fundamental right or discriminates against a suspect class based on differences such as gender, race, religion or national origin. *Sonnier v. Quarterman,* 476 F.3d 349, 368 (5th Cir.2007) (citing *Plyer v. Doe,* 457 U.S. 202, 215–16, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982)); *see Burlington N. R.R. Co. v. Ford,* 504 U.S. 648, 651, 112 S.Ct. 2184, 119 L.Ed.2d 432 (1992) (classifications based on race or religion are suspect classifications); *Mississippi University for Women v. Hogan,* 458 U.S. 718, 723–25, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) (classification based on gender calls for heightened standard of review); *Loving v. Virginia,* 338 U.S. 1, 10–12, 69 S.Ct. 1434, 93 L.Ed. 1765

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2573007 (N.D.Tex.)

(Cite as: 2010 WL 2573007 (N.D.Tex.))

(1967) (classification based on race is a suspect classification); *Oyama v. California,* 332 U.S. 633, 643–47, 68 S.Ct. 269, 92 L.Ed. 249 (1948) (classification based on national origin is a suspect classification). However, where the plaintiff is not a member of a protected class, an equal protection claim is evaluated under the rational basis test. *Reid v. Rolling Fork Pub. Util. Dist.,* 854 F.2d 751, 753 (5th Cir.1988) ("Since this case does not concern a suspect or quasi-suspect classification such as race or sex to which heightened scrutiny is given, the equal protection clause requires only a minimum degree of rationality.") Where the alleged unlawful government action does not appear to classify or distinguish between two or more relevant persons or groups, or implicate a fundamental right, then the government's action, even if irrational, does not violate the Equal Protection Clause. *Vera v. Tue,* 73 F.3d 604, 610 (5th Cir.1996) (citing *Brennan v. Stewart,* 934 F.2d 1248, 1257 (5th Cir.1988)); *Stefanoff,* 154 F.3d at 525.

In the case at bar, Plaintiff makes no claim that he is a member of a suspect class. Furthermore, the Defendants' alleged actions do not appear to classify or distinguish between two or more relevant persons or groups and Plaintiff has failed to identify any fundamental right which has been implicated. There is no right to parole release in Texas. Plaintiff's conclusory allegations of equal protection violations are insufficient to maintain this claim. *See Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993) (holding that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."); *Van Cleave v. United States,* 854 F.2d 82, 84 (5th Cir.1988) (requiring specific facts and noting that conclusory allegations are insufficient to maintain a claim under § 1983).

*4 To the extent that Plaintiff seeks redress on a state law claim of tortuous interference with a contract, this Court is without jurisdiction to entertain his complaint. When a complaint presents no federal question, 28 U.S.C. § 1332 requires complete diversity of citizenship and $75,000 in controversy to invoke the jurisdiction of a federal court. From the face of Plaintiff's complaint, it is apparent that he and the Defendants are all citizens of Texas. *Complaint ¶ IV.* Moreover, Plaintiff does not make

a claim for damages in excess of $75,000. *Complaint ¶ VI and attachment thereto.* Because there is no diversity of citizenship and because the amount in controversy appears insufficient, Plaintiff's complaint, construed as a diversity action, is subject to dismissal for lack of jurisdiction.[FN1]

> FN1. "[S]ubject-matter jurisdiction is not waivable, and the federal courts are under a continuing duty to inquire into the basis of jurisdiction in the district court." *Warren v. U.S.,* 874 F.2d 280, 281–82 (5th Cir.1989) (citing *Smith v. Booth,* 823 F.2d 94, 96 (5th Cir.1987)). "[T]he District Court is vested with authority to inquire at any time whether the [ ] conditions [to the exercise of its jurisdiction] have been met." *Broussard v. U.S.,* 989 F.2d 171, 176 (5th Cir.1993) (quoting *McNutt v. General Motors Acceptance Corp. of Indiana,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)).

Plaintiff next argues that state officials are in breach of contract for violating the provisions set forth in his plea agreement. Where a civil rights plaintiff's claims are premised on the alleged breach of a plea agreement, such claims would necessarily imply the invalidity of his conviction or sentence and are thus barred under the ruling of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). *Bonner v. Castloo,* 193 Fed.Appx. 325, 325, 2006 WL 2233224, 1 (5th Cir.2006). Under *Heck v. Humphrey,* when a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, the complaint must be dismissed unless the plaintiff demonstrates that the decision resulting in his confinement has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. *Heck v. Humphrey,* 512 U.S. at 486–87. Plaintiff in the instant case has made no such showing. Therefore, his breach-of-plea-agreement claim is not cognizable at this time.

Next, Plaintiff claims that he has been subjected to libel and slander which have exposed him to public hatred and contempt. Plaintiff cannot prevail on this claim.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2573007 (N.D.Tex.)

(Cite as: 2010 WL 2573007 (N.D.Tex.))

Allegations of an injury solely to a plaintiff's reputation are insufficient to establish § 1983 liability. *E.g., Oliver v. Collins,* 904 F.2d 278, 281 (5th Cir.1990); *Geter v. Fortenberry,* 849 F.2d 1550, 1556 (5th Cir.1988); *Savage v. Snow,* 575 F.Supp. 828, 837 (S.D.N.Y.1983). To establish a federal claim under § 1983, more must be involved than simple defamation, even if the defamatory remarks are uttered by a state actor. *Paul v. Davis,* 424 U.S. 693, 711–12, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Geter,* 849 F.2d at 1556; *Cook v. Houston Post,* 616 F.2d 791, 794 (5th Cir.1980). Even a malicious slander or defamation alone does not constitute the deprivation of a liberty interest. *See Siegert v. Gilley,* 500 U.S. 226, 234, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (noting that the Supreme Court's decision in *Paul v. Davis* turned not on the state of mind of the defendant but on the lack of a constitutionally protected interest in a reputation).

**\*5** Finally, Plaintiff alleges that he has been subjected to harassment and threats by Defendants. Allegations of threats and harassment do not state colorable civil rights claims. Threats, harassment and verbal abuse are not actionable under § 1983. *See e.g., Bender v. Brumley,* 1 F.3d 271, 274 n. 4 (5th Cir.1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action.); *United States v. Bigham,* 812 F.2d 943, 949 (5th Cir.1987) (holding that technical batteries, angry words or passing thumps do not rise to the level of constitutional abuses); *Boettner v. Raimer,* 2004 WL 2853054, \* 1 (5th Cir.2004) (citing *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir.1983)) ("[T]hreats made against inmates by prison officials do not amount to constitutional violations.").

Davis was given the opportunity to expound on the factual allegations of his complaint by way of questionnaire. *See Eason v. Thaler,* 14 F.3d 8 (5th Cir.1994) (requiring further development of insufficient factual allegations before dismissal as frivolous is proper); *Watson v. Ault,* 525 F.2d 886, 892–93 (5th Cir.1976) (affirming use of questionnaire as useful and proper means for court to develop factual basis of *pro se* plaintiff's complaint). However, he failed to allege any facts which would indicate that his constitutional rights have been violated. *See Plaintiff's Answers to the Court's Questions.*

A district court may dismiss a complaint filed by a prisoner proceeding *in forma pauperis* if it determines that the action is frivolous. 28 U.S.C. § 1915(e)(2)(B)(i). An action is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *Henson–El v. Rogers,* 923 F.2d 51, 53 (5th Cir.1991). A complaint is without an arguable basis in law if it is "based on an indisputably meritless legal theory." *Neitzke,* 490 U.S. at 327. The claims set forth in the case at bar have no arguable basis in law.

For the foregoing reasons, it is ORDERED that Plaintiff's civil rights claims relating to the alleged breach of his plea agreement are DISMISSED pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) as frivolous and with prejudice to their being asserted again unless Plaintiff can demonstrate that the conditions set forth in *Heck v. Humphrey* have been satisfied.[FN2]

> FN2. Where a § 1983 plaintiff's claims attack the fact or duration of his confinement and such claims are dismissed under *Heck v. Humphrey,* the dismissal should be "with prejudice." *Boyd v. Biggers,* 31 F.3d 279, 284 (5th Cir.1994); *Stephenson v. Reno,* 28 F.3d 26, 27–28 (5th Cir.1994).

It is further ORDERED that Plaintiff's remaining civil rights claims are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e) (2)(B)(i) as frivolous.

It is further ORDERED that Plaintiff's state law claims of tortuous interference with a contract are dismissed without prejudice pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, for lack of jurisdiction.

It is further ORDERED that, to the extent that Plaintiff's complaint presents issues cognizable in a habeas proceeding, such claims are dismissed without prejudice.

The Clerk of Court shall transmit a copy of this order to Plaintiff.

**\*6** SO ORDERED.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 2573007 (N.D.Tex.)

(Cite as: 2010 WL 2573007 (N.D.Tex.))

N.D.Tex.,2010.

Davis v. Livingston
Not Reported in F.Supp.2d, 2010 WL 2573007
(N.D.Tex.)
END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.